Commercial Banking Corporation, Appellant, *v.* Freeman, Secretary of Banking.

Argued January 8, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Robert Dechert*, with him *Lucien B. Carpenter, Henry C. Beerits, Barnes, Dechert, Price & Smith, W. S. T. Hurlock, Jr.,* and *Nauman, Smith & Hurlock*, for appellant.

*Harry F. Stambaugh*, with him *Ralph B. Umsted*, Deputy Attorney General, and *James H. Duff*, Attorney General, for appellee.

OPINION BY MR. JUSTICE DREW, March 25, 1946:

The bill in equity filed in this case by plaintiff, Commercial Banking Corporation, seeks an injunction restraining defendant, Secretary of Banking of this Commonwealth, from enforcement of a Cease and Desist Order directing plaintiff to discontinue "the business of selling money orders to the public, which, in effect constitutes the business of receiving moneys in this Commonwealth for transmission in violation of the provisions of Section 1505 of the Banking Code, Act of May 15, 1933, P. L. 624, as amended." Defendant filed an answer, and thereafter it was stipulated by the parties that the question of issuing an injunction and the merits of the case should be disposed of on the pleadings. The learned court below, after argument, dismissed the bill, and from that decree plaintiff has appealed.

From the pleadings and the stipulation filed following the entry of the final decree of the court below, the following facts appear: Plaintiff is a Delaware corporation, duly registered to engage in business in the Commonwealth of Pennsylvania as follows: "To buy, sell, lease, store and repair motor vehicles, their parts and accessories; to render assistance and accommodation, monetary or otherwise, to person or persons engaged in the business of buying, selling and dealing in motor vehicles, their parts and accessories; to buy, sell, borrow on, negotiate, or otherwise deal in notes, leases, open accounts and other similar evidences of debt secured on property of any kind."

Since July 1942, plaintiff has been engaged in the business of selling commercial money orders in Pennsylvania in the following manner: It has many agents in and about Philadelphia duly authorized to issue its money orders. These agents are drug and grocery stores and other neighborhood business concerns, but not banks. On receipt of an application and the purchase price from any individual, plaintiff's agent sells and delivers to that person a duly countersigned money order, in the

form of a draft drawn on plaintiff, payable through the Philadelphia National Bank, and made in the amount, not exceeding $100, and to the order of the person designated by the purchaser. Plaintiff's agent on selling the order receives from the purchaser the amount in which the order is to be drawn, together with a small sum determined in accordance with plaintiff's fee schedule, and issues a receipt to the purchaser therefor. Out of the money so received by the agent, he is authorized to retain for himself his commission. Later plaintiff either itself collects the balance due from the agent or the agent sends that amount by check to plaintiff. Upon receiving the money, plaintiff deposits it in a special account maintained by it in the Philadelphia National Bank. Upon presentation of the money order to that bank by the payee or holder, it is forwarded by the bank to plaintiff, and if in proper form and duly endorsed, plaintiff remits the amount of the order to its bank by check drawn on its special account. The bank then pays the amount of the order to the payee or holder. Plaintiff does not transmit the money orders through the mails or otherwise, but merely delivers them at the time of the sale to the customer, and undertakes, on presentation of the orders properly endorsed, to honor and pay them. The orders are designed to be forwarded by the purchaser to the payee and are sold to the purchaser for that purpose. During 1944, the aggregate amount of money orders issued by plaintiff to about 100,000 customers in this manner was approximately $1,400,000.

Section 1505 of the Banking Code, as amended, contended by the Secretary of Banking as authority for his Cease and Desist Order, provides: "A. The only corporations or persons who shall be authorized to engage in the business of receiving moneys in this Commonwealth for deposit or for transmission, or to establish in this Commonwealth a place of business for the purpose of receiving moneys for deposit or for transmission, shall be banks, bank and trust companies, savings banks, and

private banks." Paragraph "B" of this section imposes penalties for violation of the prohibition, and paragraph "C" makes certain exceptions to the prohibition, among which are "express, steamship and telegraph companies." It is not contended by plaintiff that it is a bank or that it falls within any of the exceptions; nor is it argued by the Secretary of Banking that plaintiff is receiving money for deposit. The sole question involved is whether the particular kind of "money order business" in which plaintiff is engaged falls within the meaning of the expression contained in the Banking Code "the business of receiving moneys in this Commonwealth for . . . transmission . . ."

In considering this case, it must be kept in mind that the Banking Code is a complete codification of the laws regulating the business of banking in this State. In enacting this statute, it clearly appears that the fundamental intention of the legislature was to control the business of handling the moneys of others, and to restrict those persons who may engage in such, to the end that unscrupulous or irresponsible persons may not obtain possession of the moneys of the general public and such moneys be lost. The Code was intended to prevent fraud and therefore must be construed to effect that purpose: *Verona v. Schenley Farms Co.*, 312 Pa. 57, 167 A. 317. Section 1505 A of this act should be liberally interpreted, since the penalties provided by clause B thereof are intended merely as a means of enforcing compliance with the statute's provisions. It is well settled that courts may put a literal construction on a penal clause, and a liberal construction on a remedial clause in the same statute: *Commonwealth v. Shaleen*, 215 Pa. 595, 64 A. 797.

Plaintiff, by a procedure which it has itself established, makes itself the efficient agent in getting the money from the customer to the payee. The money orders are designed to be forwarded by the purchaser to the payee and are sold for that very purpose. In the ordi-

nary course of events the payee receives the order and deposits it in his bank, which in turn sends it through to the Philadelphia National Bank. Plaintiff then sends its check to that bank to pay the order. The money thereafter must travel back to the payee. We are convinced that this is an actual transmission of money within the meaning of Section 1505 of the Banking Code and an obvious attempt to circumvent its provisions. To hold otherwise would do violence to the legislative intent and defeat the very purpose of the Code. The statute does not say that the transmission must actually be made by the party who receives the money. Plaintiff receives the money for transmission. Every act in the process of transmission need not be done by plaintiff itself. It is sufficient that it has set up a method by which the money may be transmitted to a distant payee, and itself pays the money pursuant to the money order. The act of the customer in mailing the money order to a distant creditor does not transmit the money but does place in the creditor's hands the instrument which enables him to compel the transmission of the money from plaintiff to himself.

Under the circumstances, we agree with the learned court below: "That the purpose of selling commercial money orders is to facilitate the transmission of moneys we have no doubt. The whole transaction would be fruitless and profitless were this not so. This transmission may be from person to person or from place to place. Plaintiff contends that it does not transmit the money orders. This is conceded to be true, but the transmission of a money order and the transmission of money are two different things. The commercial money orders are in the form of a draft. They are drawn by the plaintiff upon itself and made payable to a designated payee. By this means, the plaintiff issues to the purchaser an evidence of the fact that it has received money in a stipulated amount from the purchaser, which it agrees to pay to the payee or his order. The money order is a

means of transferring cash or credit. But the transaction is not completed until the plaintiff transmits the cash to the payee. Under the plaintiff's own statement, it receives cash from the purchaser, and upon presentation of the money order to a bank for payment, transmits the designated sum to the bank for payment to the payee or holder. Without this transmittal to the bank, the whole thing would be a nullity. It is the plaintiff which make this transmittal, not the purchaser. The purchaser transmits the evidence of the right to receive money, but the plaintiff transmits the money."

Plaintiff argues that "In the matter of selling drafts on one's self there is no basis for a classification that would deny the right to appellant and grant it without supervision or condition to another company merely because its charter happened to contain express company powers." A party who attacks a classification has the burden of proving that the classification is unreasonable: *Pennsylvania Co. v. Trustee Case,* 345 Pa. 130, 27 A. 2d 57. Plaintiff has offered nothing to show that the placing of express, steamship and telegraph companies in a separate class and excepting them from the provisions of Section 1505 A of the Code is unreasonable. The legislature could very reasonably regard such companies as different from the general run of individuals or corporations engaged in selling money orders on themselves. They are engaged in businesses which require large amounts of capital, tangible property, cash and other assets. They have been long established, and recognized as stable and substantial. We are satisfied that such classification is reasonable. No monopoly, as contended by plaintiff, is conferred upon express, steamship and telegraph companies of selling drafts on themselves, because of the enormous competition of postal money orders and drafts and money orders issued by banks.

For these reasons, we are convinced that the learned court below properly dismissed the bill of complaint.

Decree affirmed.