513 A.2d 427

**Karin PEKULAR and Frank Pekular, Her Husband, Appellants at No. 866**

**v.**

**James H. EICH and State Farm Mutual Automobile Insurance Company, Appellant at No. 865.**

Superior Court of Pennsylvania.

Argued Jan. 28, 1986.

Filed July 21, 1986.

278

Frank M. Gianola, Pittsburgh, for appellants (at 866) and appellees (at 865).

Kenneth R. Behrend, Pittsburgh, for appellants (at 865) and appellees (at 866).

Before CIRILLO, President Judge, and DEL SOLE and BECK, JJ.

CIRILLO, President Judge:

This cross-appeal presents two questions for our determination: (1) whether the enactment of the Unfair Insurance Practices Act (UIPA)[1] bars an insured from pursuing a private cause of action against his insurer based upon a theory of common law fraud and deceit; and (2) whether the enactment of UIPA bars an insured from pursuing a private cause of action against his insurer based on the provisions of the Unfair Trade Practices Consumer Protection Law (CPL).[2]

1. Act of July 22, 1974, P.L. 589, No. 205, § 1 *et seq.*, 40 P.S. § 1171.1 *et seq.*
2. Act of Dec. 17, 1968, P.L. 1224, No. 387 § 201–1 *et seq.*, 73 P.S. § 201–1 *et seq.*

The insureds, Karin and Frank Pekular, instituted the present action by filing a three-count complaint against James H. Eich and his employer, State Farm Insurance Company. In their complaint, the Pekulars averred that State Farm, through its agent, Mr. Eich, sold Mr. Pekular four policies of automobile insurance. Mr. Pekular was allegedly advised by Mr. Eich that the Pekulars could save money through reduced premiums by electing to make the No-Fault health benefits available under the policies secondary to Blue Cross/Blue Shield or other health benefits. According to the Pekulars, Mr. Eich knowingly and purposefully did not explain that such an election would effectively reduce the total amount of primary health benefits that the Pekulars could claim in the event they were injured in an accident. The Pekulars claimed that they relied upon the "representations" and "inducements" of Mr. Eich that they could "save money" and elected to have the No-Fault benefits designated as secondary coverage. Mrs. Pekular later allegedly suffered serious and permanent injuries while driving a vehicle insured pursuant to one of the State Farm policies. She was subsequently denied payments which would have been forthcoming had the Pekulars not elected to designate the No-Fault benefits as secondary.

Counts I and II of the complaint alleged common law fraud and deceit against Mr. Eich and State Farm respectively and demanded compensatory and punitive damages. Count III alleged violations of Pennsylvania's Unfair Trade Practices Consumer Protection Law and demanded compensatory damages. The trial court dismissed preliminary objections to counts I and II and sustained preliminary objections as to count III. This Court granted permission to file immediate appeals, and both parties appealed.

In passing upon preliminary objections which are denied by the trial court, a reviewing court is required to accept as true the averments of fact in the complaint. *Martino v. Transport Workers Union of Philadelphia Local 234*, 301 Pa.Super. 161, 447 A.2d 292 (1982). With respect to preliminary objections which are sustained by the trial court:

In determining whether the lower court properly dismissed the complaint, we must take as true 'every well pleaded material fact set forth in the pleading ..., as well as the inferences reasonably deducible therefrom.' *Schott v. Westinghouse Electric Corp.,* 436 Pa. 279, 282, 259 A.2d 443, 445 (1969). Furthermore, we must bear in mind

the rule that preliminary objections should be sustained and a complaint dismissed only in cases which are clear and free from doubt. *Legman v. Scranton School District,* 432 Pa. 342, 247 A.2d 566 (1968); *Todd v. Skelly,* 384 Pa. 423, 120 A.2d 906 (1956); *Gardner v. Allegheny County,* 382 Pa. 88, 114 A.2d 491 (1955). To sustain preliminary objections in the nature of a demurrer, it must appear with certainty that, upon the facts averred, the law will not permit recovery by the plaintiff. Where any doubt exists as to whether or not the preliminary objections should be sustained, that doubt should be resolved by refusing to sustain the objections. *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 167 A.2d 472 (1960); *Sun Ray Drug Co. v. Lawler,* 366 Pa. 571, 79 A.2d 262 (1951). *Id.,* 436 Pa. at 291, 259 A.2d at 449.

*Harkins v. Zamichieli,* 266 Pa.Super. 401, 404–05, 405 A.2d 495, 497 (1979).

## I

The UIPA represents a broad and sweeping effort by our Legislature to curb unfair or deceptive practices in the insurance industry. The purpose of the Act is set forth in section 2, which provides:

The purpose of this act is to regulate trade practices in the business of insurance in accordance with the intent of congress as expressed in the act of Congress on March 9, 1945 (Public Law 15, 79th Congress), by defining or providing for the determination of all such practices in this state which constitute unfair methods of competition

or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined.

Act of July 22, 1974, P.L. 589, 40 P.S. § 1171.2 (Supp.1985) (footnote omitted). Section 4 of the Act provides:

No person shall engage in this state in any trade practice which is defined or determined to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance pursuant to this act.

40 P.S. 1171.4. Section 5 of the Act, 40 P.S. § 1171.5, in relevant part, defines "unfair methods of competition" and "unfair or deceptive acts" to include:

(1) Making, publishing, issuing or circulating any estimate, illustration, circular, statement, sales presentation, omission comparison which:

(i) Misrepresents the benefits, advantages, conditions or terms of any insurance policy;

. . . .

(vi) Is a misrepresentation for the purpose of inducing or tending to induce the lapse, forfeiture, exchange, conversion or surrender of any insurance policy;

. . . .

(10) Any of the following acts if committed or performed with such frequency as to indicate a business practice shall constitute unfair claim settlement or compromise practices.

(i) Misrepresenting pertinent facts or policy or contract provisions relating to coverages at issue.

. . . .

(12) Making false or fraudulent statements or representations on or relative to an application for an insurance policy, for the purpose of obtaining a fee, commission, money or other benefit from any insurers, agent, broker or individual.

These statutory prohibitions are enforced by the Insurance Commissioner of Pennsylvania, who is empowered to "examine and investigate the affairs of every person in this State" to determine whether the UIPA has been violated.

40 P.S. § 1171.7. If a violation is found the Commissioner may impose sanctions, including a cease and desist order and suspension or revocation of license. 40 P.S. § 1171.9. The Commissioner may also seek judicial imposition of a civil penalty of up to $5,000.00 for each knowing violation, or $1,000.00 for each unknowing violation. 40 P.S. § 1171.-11.

The Pekulars concede that the acts and practices alleged in their complaint fall within the definitional language of the UIPA. They maintain, however, that the enactment of the UIPA does not bar an insured's private common law action for fraud and deceit against an insurer. Similarly, the Pekulars argue that the enactment of the UIPA does not bar a private action under the CPL. Eich and State Farm argue that the UIPA provides the sole and exclusive remedy for acts and practices which fall within the definitional language of the Act.

## II

■ We turn first to the question of whether a common law cause of action for fraud is barred due to the enactment of the UIPA. After careful analysis of the UIPA and relevant case law, we conclude that a common law action for fraud and deceit is not barred.

The Statutory Construction Act of 1972 provides:

§ 1929. Penalties no bar to civil remedies

The provision in any statute for a penalty or forfeiture for its violation shall not be construed to deprive an injured person of the right to recover from the offender damages sustained by reason of the violation of such statute.

1 Pa.C.S. § 1929. We read this statute to provide for the continued viability of causes of action cognizable under the common law existing when the UIPA was enacted. A common law cause of action for fraud based upon representations by a vendor which are calculated to deceive has been recognized by the courts of this Commonwealth for over one hundred years. *See Croyle v. Moses,* 90 Pa. 250 (1879).

Further support for our position is found in *Dozor Agency, Inc. v. Rosenberg*, 403 Pa. 237, 169 A.2d 771 (1961). In *Dozor*, our Supreme Court held that the precursor of the UIPA, the Unfair Practices Act of 1947,[3] did not provide the exclusive remedy in cases involving alleged fraudulent conduct on the part of an insurer. In so doing, the Court stated:

> We are of the opinion that the Act was never intended to and *does not vest exclusive* jurisdiction in the Insurance Commissioner in cases such as the present and thus oust the jurisdiction of a Court of Equity which for many years has possessed and exercised jurisdiction in cases arising out of facts on all fours with the instant case. Moreover if there were any doubt on this point it would be removed by Section 10 of the Unfair Practices Act, which provides:
>
> "The powers vested in the commissioner by this act, and the forfeiture provided for violation or an order to cease and desist made pursuant thereto, shall be *in addition* to any other procedures, penalties, fines or forfeitures authorized by law with respect to the methods, acts, and practices hereby declared to be unfair or deceptive." 40 P.S. § 1160.
>
> Section 10 preserves all the procedures authorized by law and for this additional reason the Act did not destroy equitable jurisdiction in a case such as this.

*Dozor, supra*, 403 Pa. at 242, 243, 169 A.2d at 774. (Emphasis in original). We note that 40 P.S. § 1160, quoted by the Court in *Dozor*, has been substantially reenacted as part of the UIPA. 40 P.S. § 1171.14. The reasoning utilized by the Court in *Dozor* is equally applicable to the first issue presented in the instant case.

Finally, we find the concurring opinion in *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company*, 494 Pa. 501, 431 A.2d 966 (1981) to be instructive on this point. In *D'Ambrosio*, the Supreme Court held that an insurer who allegedly acted unreasonably and in bad faith

**3.** Pa.Stat.Ann.tit. 40 §§ 1151–1162 (Purdon 1971) (repealed 1974).

could only be subject to the sanctions specifically authorized by the UIPA, and refused to recognize a "new tort" which would grant an insured a right of action to recover for emotional distress resulting from his insurer's bad faith conduct. In a concurring opinion, Chief Justice Nix, then Justice Nix, stated:

> I join the majority opinion but merely wish to briefly respond to the objection raised by the dissent. *In addition to the deterrent provisions of the Unfair Insurance Practices Act, Act of July 22, 1974, P.L. 589, 40 P.S. §§ 1171.9 and 1171.11 (Supp.1980), appellant was also in a position to seek relief under a theory of breach of contract, or by pursuing the common law tort of deceit. Korona v. Bensalem Tp.,* 385 Pa. 283, 122 A.2d 688 (1956). *Cf Setlock et ux. v. Sutila,* 444 Pa. 552, 282 A.2d 380 (1971); *Nadolny v. Scoratow,* 412 Pa. 488, 195 A.2d 87 (1963). I do not accept the dissent's implicit premise that these existent remedies are inadequate to make appellant whole.

*D'Ambrosio, supra,* 494 Pa. at 515, 431 A.2d at 973–74. (Emphasis added). We agree that the Pekulars, like the appellant in *D'Ambrosio,* are in a position to seek relief by pursuing the common law tort of deceit.

Eich and State Farm argue that after *D'Ambrosio,* the UIPA provides the sole and exclusive remedy in all actions based upon factual allegations falling within the purview of § 1171.5. We do not agree. In *D'Ambrosio,* the Court expressly refused to supplement the UIPA with a judicially created cause of action which had never before been recognized by Pennsylvania courts. However, we do not read *D'Ambrosio* to preclude *existing* common law remedies such as fraud and deceit.

█ Eich and State Farm also argue that, as a matter of law, the Pekulars are guilty of "supine negligence" and that an insurer may not be saddled with the burden of proving that an insured read and understood the limitation provisions of the governing insurance contract. They cite *Standard Venetian Blind Company v. American Empire*

*Insurance,* 503 Pa. 300, 469 A.2d 563 (1983) in support of this proposition. In *Standard,* our Supreme Court held that where a policy limitation relied upon by an insurer is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proving that he failed to read the limitation or that he did not understand it. *Id.,* 503 Pa. at 307, 469 A.2d at 567. However, this holding was preceded and, in our view, tempered and limited by the following quote:

> *[I]n the absence of proof of fraud,* 'failure to read [the contract] is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.'

*Id.,* 503 Pa. at 305, 469 A.2d at 566, *citing Olson Estate,* 447 Pa. 483, 488, 291 A.2d 95, 98 (1972) (emphasis added), quoting *Orner v. T.W. Phillips Gas & Oil Co.,* 401 Pa. 195, 199, 163 A.2d 880, 883 (1960). In the instant case, the Pekulars have alleged, and intend to prove, that the limitation in coverage provided by the contract was obtained as a result of intentionally false and fraudulent representations as to the effect of the election. Therefore, we are not inclined to rule that, as a matter of law, the Pekulars are bound by the terms of the contract.

 Finally, Eich and State Farm contend that, in any event, the allegations contained in the Pekulars' complaint do not rise to the level of fraud. After careful analysis of the allegations in the Pekulars' complaint, we find this argument to be without merit. The Pekulars have alleged that they have justifiably relied to their detriment upon allegedly intentional misrepresentations made by their insurance agent.

## II

We next consider the question of whether an insured may maintain a private cause of action under the Unfair Trade Practices and Consumer Protection Law (CPL) when the allegations in his complaint fall within the purview of the acts and practices prohibited by § 1171.5 of the UIPA. The

trial court held that such a cause of action may not be maintained and sustained preliminary objections to Count III of the Pekulars complaint. We disagree.

Our Supreme Court explained the purpose of the CPL and set forth the appropriate standards for its construction in *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812 (1974), wherein the Court stated:

> The Legislature sought by the Consumer Protection Law to benefit the public at large by eradicating, among other things, "unfair or deceptive" business practices. Just as earlier legislation was designed to equalize the position of employer and employee and the position of insurer and insured, this Law attempts to place on more equal terms seller and consumer. These remedial statutes are all predicated on a legislative recognition of the unequal bargaining power of opposing forces in the marketplace. Instantly, the Legislature strove, by making certain modest adjustments, to ensure the fairness of market transactions. No sweeping changes in legal relationships were occasioned by the Consumer Protection Law, since prevention of deception and the exploitation of unfair advantage has always been an object of remedial legislation.
>
> Although the Consumer Protection Law did articulate the evils desired to be remedied, the statute's underlying foundation is fraud prevention. This Court emphatically stated in *Verona v. Schenley Farms Co.*, 312 Pa. 57, 64, 167 A. 317 320 (1933), "[a]s a statute for the prevention of fraud, it must be liberally construed to effect the purpose...." *Accord, Commercial Banking Corp. v. Freeman*, 353 Pa. 563, 567, 46 A.2d 233, 235 (1946); *Alford v. Raschiatore*, 163 Pa.Super. 635, 63 A.2d 366 (1949); *Nolan v. Jones*, 67 Pa.Super. 430 (1917), *aff'd*, 263 Pa. 124, 106 A. 235 (1919); *Rudy v. Friedman*, 54 Pa.D. & C.2d 628 (C.P. Delaware County 1971). *See generally* 3 J. Sutherland, Statutes and Statutory Construction § 70.–01 (C.Sands ed. 1974); 1 W. Blackstone, Commentaries * 88–89.

> Since the Consumer Protection Law was in relevant part designed to thwart fraud in the statutory sense, it is to be construed liberally to effect its object of preventing unfair or deceptive practices.

*Monumental,* 459 Pa. at 457–460, 329 A.2d at 815–17. (Footnotes omitted). With this liberal standard of construction in mind, Pennsylvania courts have repeatedly held that violations of other statutes may also be violations of the CPL. *See generally Culbreth v. Lawrence J. Miller, Inc.,* 328 Pa.Super. 374, 477 A.2d 491 (1984) (regulation of public adjusters and their contracts possible under both the CPL and the Public Adjuster Law); *Pennsylvania Bankers Association v. Commonwealth, Bureau of Consumer Protection,* 58 Pa.Commw. 170, 427 A.2d 730 (1981) (regulation of banks possible under both the CPL and the Banking Code); *Safeguard Investment Corp. v. Commonwealth,* 44 Pa. Commw. 417, 404 A.2d 720 (1979) (CPL applicable to activities allegedly unlawful under usury statutes); *Bolden v. Potamkin-Auerbach Chevrolet, Inc.,* 470 F.Supp. 618 (E.D. Pa.1979) (breach of Truth in Lending Act and Pennsylvania Motor Vehicle Sales Finance Act also violation of the CPL).

Section 201–2(4) of the CPL defines "unfair methods of competition" and "unfair or deceptive acts or practices" to include, as relevant here, the following:

> (xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;
>
> (xii) Promising or offering prior to time of sale to pay, credit or allow to any buyer, any compensation or reward for the procurement of a contract for purchase of goods or services with another or others, or for the referral of the name or names of another or others for the purpose of attempting to procure or procuring such a contract of purchase with such other person or persons when such payment, credit, compensation or reward is contingent upon the occurrence of an event subsequent to the time of the signing of a contract to purchase;
>
> . . . .

(xvii) Engaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding.

Section 201–9.2 provides a private cause of action for violation of the provisions of the CPL and further provides that the court may, in its discretion, award up to three times the actual damages sustained.

Unquestionably, the alleged unfair or deceptive acts or practices of Eich and State Farm fall within the expansive language of the CPL. Section 3 of the CPL, 73 P.S. § 201–3, provides in relevant part: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ... are hereby declared unlawful." Section 2(3) of the CPL defines "trade" and "commerce" as "the advertising, offering for sale, sale or distribution of *any services* and *any property* ...." (Emphasis added). The business of an insurer and its agents is to sell to an insured a property interest in a policy or policies of insurance, and thus is a business squarely within the CPL's definition of "trade" and "commerce". Although certain persons and entities are expressly excluded from regulation under the CPL,[4] the legislature did not expressly exclude insurance companies or their agents in either its original enactment in 1968 or in its subsequent reenactment in 1976. Therefore, there is no exclusion. *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. at 457 n. 5, 329 A.2d at 815 n. 5 (there is no indication of an intent to exclude a class or classes of transactions from the Consumer Protection Law. When the legislature deemed it necessary to make an exception from the Law's scope, it did so in clear language). *See also Culbreth v. Lawrence J. Miller, Inc.*, 328 Pa.Super. at 386, 477 A.2d at 496 (no express exclusion for public adjusters). While it is clear that the acts of insurers and their agents fall within the purview of the CPL, our analysis does not end here. The question we are confronted with is whether the Legislature intended the UIPA and the CPL to coexist as independent statutory mechanisms or whether the UIPA is intended to provide the

4. *See* 73 P.S. § 201–3.

sole and exclusive statutory penalty for alleged unfair or deceptive acts commited by insurers.

Eich and State Farm contend there is an irreconcilable conflict or inconsistency between the UIPA and the CPL. Therefore, they argue, the rules of statutory construction require that the detailed provisions of the UIPA take precedence over the more broad and general provisions of the CPL. We do not agree since our reading of the two statutes does not reveal an irreconcilable conflict.

In the absence of a manifestly contrary intention of the Legislature, two apparently conflicting statutes must be construed so that both are allowed to operate. 1 Pa.C.S. § 1933; *Appeal of Yerger*, 460 Pa. 537, 333 A.2d 902 (1975); *Culbreth v. Lawrence J. Miller, Inc., supra; Young v. Young*, 320 Pa.Super. 269, 467 A.2d 33 (1983). Further, Pennsylvania courts do not favor a repeal of statutes by implication unless there is an irreconcilable conflict between statutes applying to the same matter. *Consumers Ed. and Protective Ass'n. v. Schwartz*, 495 Pa. 10, 23 n. 17, 432 A.2d 173, 180 n. 17 (1981); *Young, supra.*

The UIPA vests the Insurance Commissioner with the power to investigate specifically defined acts and practices of insurers, to levy limited monetary penalties, and to suspend or revoke licenses. The CPL on the other hand affords an aggreived consumer a private statutory remedy by which he may receive compensation for statutorily defined wrongs done to him in the course of any trade or business. We see no inconsistency between the UIPA providing for administrative investigation and an imposition of limited penalties and the CPL providing a means by which a consumer may privately seek compensation for wrongs allegedly suffered. Our conclusion that there is no inherent irreconcilable conflict is supported by the fact that the UIPA contains no provision either stating or implying that the power vested in the Insurance Commissioner represents the exclusive means by which an insurer's unfair or deceptive acts are to be penalized or that the insured is

precluded from seeking private compensation for damages incurred. Further, as noted previously, we are mindful of the fact that our Legislature did not see fit to exclude insurers, insurance agents or insurance transactions from the broad scope of CPL regulation in either the original enactment of the CPL in 1968 or, more importantly, in its subsequent reenactment in 1976, a full two years *after* the enactment of the UIPA.

■ Finally, Eich and State Farm contend that our Supreme Court's holding in *D'Ambrosio, supra,* precludes a cause of action under the CPL against an insurer based on allegedly unfair or deceptive acts or practices. *See Layton v. Liberty Mutual Fire Insurance Co.,* 577 F.Supp. 1 (E.D.Pa.1983); *Talamini v. Allstate Insurance Company,* No. 83–3292 (E.D.Pa. filed August 16, 1983). *Cf. Deetz v. Nationwide Mutual Insurance Co.,* 20 D & C3d 499 (Dauphin, 1981). We do not agree. In *D'Ambrosio,* the Court was concerned only with the supplementing of the UIPA with as yet unrecognized common law claims. The Court expressly reserved for the Legislature its prerogative to " ... announce and implement the Commonwealth's public policy governing the regulation of insurance carriers. In our view, it is equally for the legislature to determine whether sanctions beyond those created under the [UIPA] are required to deter conduct which is less than scrupulous." *Id.* 494 Pa. at 508, 431 A.2d at 970. We believe that the Legislature has determined that an insured, like any other consumer, may seek compensation for damages incurred as a result of unscrupulous conduct under the provisions of the CPL and that the limited penalties of the UIPA do not represent the sole and exclusive deterrent to alleged unfair or deceptive acts of insurers and their agents.

The order of the trial court with respect to the preliminary objections to Counts I and II of the complaint is affirmed. The order of the trial court with respect to Count III is reversed. Jurisdiction is relinquished.