## Bleiberg v. Insurance Company of North America

*Frank A. McFerran, Jr.,* for plaintiffs.
*Carol A. Carolla,* for defendant.

WETTICK, *A.J.,* March 30, 1987—This is a lawsuit against an insurance company which has refused to pay a claim allegedly covered by a policy of insurance. Plaintiff's claim is for losses sustained from the collapse of a portion of a wall of a commercial building that was insured by defendant. Plaintiffs contend that the losses are covered by a provision within the policy protecting physical loss involving collapse of the building by weight of snow, ice or sleet, or rain which collects on the roof.

Count II of plaintiffs' complaint raises a claim for punitive damages and counsel fees. The insurance company has filed a preliminary objection in the nature of a demurrer to this count. This preliminary objection is the subject of this opinion and order of court.

I

In paragraph 15 of their complaint, plaintiffs allege that the insurance company wrongfully and in bad faith refused to pay insurance benefits which it knew were due and, alternatively, that the insurance company denied the claim without adequate investigation. These allegations do not support a claim for punitive damages. In Pennsylvania, punitive damages will not be awarded for breach of a contract even if the breaching party acted in bad faith. *Daniel Adams Associates Inc. v. Rimbach Publishing Inc.,* 287 Pa. Super. 74, 429 A.2d 726 (1981); *Raab v. Keystone Insurance Co.,* 271 Pa. Super. 185, 412 A.2d 638 (1979). This rule of law

served as the basis for the holding in *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa. 501, 431 A.2d 966 (1981), that punitive damages may not be awarded for an insurance company's bad faith denial of a claim.

For these reasons, we hold that the allegations in paragraph 15 of count II of plaintiffs' complaint fail to set forth a claim for punitive damages.

## II

In paragraph 16 of their complaint, plaintiffs allege that at the time the insurance company issued the policy, it did not intend to pay claims involving the collapse of a structure that were covered by the policy or to interpret in good faith the terms and conditions of the policy and that the insurance company deceitfully and fraudulently concealed from plaintiffs its true intention not to fulfill or perform the promises contained in the policy. Plaintiffs contend that these allegations state a common-law cause of action for fraud and deceit. They further contend that any claim for recovery based on the tort of fraud and deceit may include the award of punitive damages.

We agree with plaintiffs that they are entitled to raise a claim for punitive damages if they have pleaded a cause of action based on the common-law tort of fraud and deceit. See *Delahanty v. First Pennsylvania Bank*, 318 Pa. Super. 90, 130, 464 A.2d 1243, 1263 (1983), wherein the court concluded that "[i]t is difficult to picture a fact pattern which would support a finding of intentional fraud without supporting proof of 'outrageous conduct' to support an award of punitive damages." But if plaintiffs' allegations amount to nothing more than a bad faith breach of contract, the punitive damage claim

will fail under the Pennsylvania case law cited above that limits recovery for a breach of contract — regardless of the motives of the breaching party — to actual damages.

We begin our evaluation of the merits of plaintiffs' contention that they have pleaded a cause of action based on the common-law tort of fraud and deceit by reviewing *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company, supra.* In that case, a property owner filed a two-count complaint. In the first count (assumpsit), he alleged that a motorboat and motor were damaged as the result of a severe storm, that the losses were covered by an insurance policy which defendant had issued and that the defendant failed to honor the claim. In this count, he sought the cost of necessary repairs and incidental fees and expenses. In count two (trespass), he raised a claim for punitive damages. In support of this claim, he included allegations intended to show that the insurance company failed to deal fairly and in good faith with the insured. He based this claim on the case law of other jurisdictions which has permitted a tort recovery for an insurance company's bad faith conduct in responding to a bona fide claim. The *D'Ambrosio* court chose not to create this new cause of action. Although it recognized that the award of punitive damages would be an effective deterrent, it concluded that it was unnecessary and unwarranted because of the extensive legislative control over insurance companies in Pennsylvania, including the provisions of the Unfair Insurance Practices Act that prohibit unfair claims settlement practices.

In *Pekular v. Eich,* 355 Pa. Super. 276, 513 A.2d 427 (1986), the Superior Court considered the scope of *D'Ambrosio.* In *Pekular,* the insured alleged that the insurance company, through its

agent, knowingly and purposely made false and fraudulent representations concerning the consequences of an election to make no-fault health benefits secondary to other health benefits in order to induce plaintiffs to make this election, that plaintiffs made the election on the basis of these misrepresentations, and that as a result of this election, plaintiff-wife was not entitled to recover health benefits under policies with defendant for injuries suffered while driving an insured vehicle.

In counts I and II of their complaint, plaintiffs sought to recover compensatory and punitive damages under the common-law tort of fraud and deceit. Initially, the Superior Court considered the insurance company's contention that the Unfair Insurance Practices Act bars an insured from pursuing a private cause of action against an insurance company based upon the common-law tort of fraud and deceit.

The court rejected the insurance company's contention that *D'Ambrosio* has already decided this issue in the insurance company's favor:

"Eich and State Farm argue that after *D'Ambrosio,* the UIPA provides the sole and exclusive remedy in all actions based upon factual allegations falling within the purview of section 1171.5. We do not agree. In *D'Ambrosio,* the court expressly refused to supplement the UIPA with a judicially created cause of action which had never before been recognized by Pennsylvania courts. However, we do not read *D'Ambrosio* to preclude *existing* common-law remedies such as fraud and deceit." *Pekular, supra.* The court then concluded this legislation did not bar an insured from pursuing existing common-law remedies because of section 1929 of the Statutory Construction Act (1 Pa.C.S. §1929) which states that the provisions in a statute for a

penalty or forfeiture for its violation shall not be construed to bar private causes of action, and the case of *Dozor Agency Inc. v. Rosenberg*, 403 Pa. 237, 169 A.2d 771 (1961), which held that the precursor of the Unfair Insurance Practices Act did not provide the exclusive remedy in cases involving alleged fraudulent conduct on the part of the insurance company.

As a result of the *Pekular* opinion, an insurance company may no longer contend that *D'Ambrosio* should be extended to bar claims for punitive damages based on common law fraud and deceit. However, *Pekular* offers almost no guidance as to the types of allegations that will serve as a basis for a punitive damage claim. In *Pekular*, the insurance company had contended that the allegations in plaintiff's complaint did not rise to a level of fraud. The court rejected this contention in two sentences:

"After careful analysis of the allegations in the Pekulars' complaint, we find this argument to be without merit. The Pekulars have alleged that they have justifiably relied to their detriment upon allegedly intentional misrepresentations made by their insurance agent." *Pekular, supra.*

The factual allegations in *Pekular* are very different from those in the present case. In *Pekular*, plaintiffs claimed that they did not receive the coverage which they sought as a result of the insurance company's fraud. In the present case, there is no claim that the terms of the insurance agreement varied from those that the insureds would have selected. In *Pekular*, the alleged fraud dealt with misrepresentations of existing fact. In the present case, the alleged fraud dealt with misrepresentations of existing intentions as to future conduct. *Pekular* was not a claim arising out of the breach of the insurance contract because plaintiffs did not claim

that the insurance company had failed to pay claims that were due under the policy. In the present case, the punitive damage claim arises solely from the alleged breach of the insurance contract.

The *D'Ambrosio* opinion would be rendered meaningless if an insured could raise a punitive damage claim simply by stating that at the time it entered into the insurance contract, the insurance company did not intend to honor various provisions of the contract or to construe the contract in good faith. As the Federal District Court for the Eastern District of Pennsylvania stated in *Closed Circuit Corporation of America v. Jerrold Electronics Corp.*, 426 F.Supp. 361 (E.D. Pa. 1977), (quoting *Hertz Commercial Leasing Corp. v. LMC Data, Inc.*, 73 Misc. 2d 1009, 343 N.Y.S.2d 689 (1973)):

"If a party could simply, by alleging that a contracting party never intended to fulfill his promise, create a tortious action in fraud, there would be no effective way of preventing almost every contract case from being converted to a tort for jurisdictional purposes." 426 F.Supp. at 365.

In *Bevins v. King,* 514 A.2d 1044 (Vermont Supreme Court 1986), the buyers alleged that the seller failed to deliver the goods in the condition warranted. The buyers sought a tort recovery on the basis of allegations that the seller did not intend to deliver goods that complied with the terms of the contract at the time he entered into the contract. The court held that such allegations were insufficient to convert a contract recovery into a tort recovery.

"To be sure, a single transaction may give rise to multiple causes of action; although some may be time-barred, others may not. See *Aube v. O'Brien,* supra, 140 Vt. at 2-3, 433 A.2d 299. In order to create an independent cause of action in fraud, howev-

er, the claim must be based on tortious conduct of the seller. See *Z.D. Howard Co. v. Cartwright,* 537 P.2d 345, 347 (Okla. 1975). In other words, the fraud must be extraneous to the contract, rather than a fraudulent non-performance of the contract itself. *Foodtown v. Sigma Marketing Systems Inc.,* 518 F.Supp. 485, 490 (D.N.J. 1980); *Closed Circuit Corp. of America v. Jerrold Electronics Corp.,* 426 F.Supp. 361, 364 (E.D. Pa. 1977).

"In *Union Bank v. Jones,* 138 Vt. 115, 122, 411 A.2d 1338, 1343 (1980), we recognized that principles of contract and principles of fraud must be kept separate and distinct for '[i]f every broken promise were to constitute fraud, . . . the resulting instability would severely impair the conduct of business.' " 514 A.2d at 1045-6.

Also see *Comtomark Inc. v. Satellite Communications Network Inc.,* 497 N.Y.S.2d 371, 116 N.Y.A.D.2d 499 (1st Dept. 1986), where the court addressed the issue of whether a party could be adjudged liable under both fraud and contract theories when the basis for the cause of action for fraud was that a contracting party made a promise which it did not intend to keep at the time the promise was made:

"Breach of promise sounds in contract, not fraud. A contract action may not be converted into one for fraud by the mere additional allegation that the contracting party did not intend to meet his contractual obligation. (*Cf. Margate Industries Inc. v. Samincorp. Inc.,* 582 F.Supp. 611, 619-20 [S.D.N.Y. 1984]; *Gould v. Community Health Plan of Suffolk Inc.,* 99 A.D.2d 479, 470 N.Y.S.2d 415 [2d Dept. 1984]; *Vanderburgh v. Porter Sheet Metal Inc.,* 86 A.D.2d 688, 446 N.Y.S.2d 523 [3d Dept. 1982]). Trial term, therefore, erred as a matter of law when it charged that Rabin's liability for fraud

could be established by proof showing simply that he did not intend to keep the promise made to plaintiff.

"We note that New York law permits a cause of action for fraudulent inducement to contract upon a showing that factual misrepresentations, apart from a false promise to perform under the contract, were made and justifiably relied on by a contracting party to its detriment. See, e.g., *Hoke v. Shanker,* 108 A.D.2d 1065, 485 N.Y.S.2d 634 (3d Dept. 1985). Plaintiff has, however, alleged no cause of action for fraud in the inducement, nor was there proof that plaintiff justifiably relied on misrepresentations by Rabin when it decided to contract with him and his corporation." 497 N.Y.S.2d at 372-3.

The punitive damage claim in Count II of plaintiffs' complaint is based solely upon the allegations that the insurance company did not intend to pay claims covered by the policy or to interpret in good faith the terms and conditions of the policy at the time the insurance company issued the policy. Consequently, this opinion addresses only the issue of whether the allegation that the party did not intend to honor a contract at the time the party entered into the contract is sufficient to support a tort recovery for what is essentially a bad faith breach of contract. We hold that this allegation is insufficient because of the well-settled policy of the Pennsylvania courts of distinguishing between the remedies available for breach of contract and tortious misconduct. Pennsylvania law is well-settled that a bad faith refusal to abide by the terms of the contract is not tortious behavior. Since evidence that a party breached a contract — even in bad faith — will not support a recovery in tort, a tort recovery based upon the allegation that the bad faith refusal to abide by the terms of the contract began at the time the contract was formed

would obliterate this case law. Consequently, a cause of action based on the common law tort of fraud and deceit must be supported by additional allegations showing a fraudulent scheme beyond the simple allegation that the bad faith stems from the inception of the contract.

This does not necessarily mean that an award of punitive damages arising out of the breach of an insurance contract will never be proper. Tort remedies may be available for a claim that the insurance company was construing the policy to deny coverage for a particular loss for which there was a specific representation that there would be coverage at the time the insurance was furnished. *Pekular v. Eich, supra.* Tort recovery may be permitted where the contract was part of an overall fraudulent scheme of the defendant. *Donnelly v. Washington National Insurance Company,* 482 N.E.2d 424 (Ill. App. 1985); *Closed Circuit Corporation of America v. Jerrold Electric Corp., supra.* Furthermore, tort remedies may possibly apply to the situation in which it would never have been possible for the party who breached the contract to comply with its terms.

### III

Defendant's assertion that plaintiffs' complaint fails to state a claim for counsel fees is correct.

Pennsylvania follows the English rule that each party is responsible for his or her own counsel fees. Consequently, counsel fees may be awarded only where a statute or rule of court provides for the award of counsel fees, where an agreement between the parties provides for the award of counsel fees, or where the case law has recognized an exeption to the English rule. *McDevitt v. Terminal*

*Warehouse Company,* 346 Pa. Super. 186, 499 A.2d 374 (1985); *Estate of Wanamaker,* 314 Pa. Super. 177, 460 A.2d 824 (1983); *Corace v. Balint,* 418 Pa. 262, 210 A.2d 882 (1965). There is no statute, rule of court, or exception rooted in common law that permits the award of counsel fees for an insurance company's bad-faith refusal to pay a claim that is covered by the policy.* Also, the insurance agreement does not provide for the award of counsel fees.

For these reasons, we enter the following

## ORDER OF COURT

On this March 30, 1987, upon consideration of defendant's preliminary objections in the nature of a demurrer, it is hereby ordered that count II of plaintiffs' complaint is dismissed for failure to state a cause of action.

---

*In this case, there is no claim for counsel fees as part of the taxable costs of the matter based on 42 Pa.C.S. §2503.