**UNIONTOWN NEWSPAPERS, INC., t/d/b/a the Herald–Standard, a corporation, and Paul Sunyak, an individual, Petitioners,**

v.

**Lawrence ROBERTS, in his capacity as a member of the General Assembly of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 2001.

Decided May 31, 2001.

Scott E. Henderson, Pittsburgh, for petitioners.

C. Clark Hodgson, Jr., Philadelphia, for respondent.

Before DOYLE, President Judge, COLINS, McGINLEY, PELLEGRINI and FRIEDMAN, Judges.

DOYLE, President Judge.

 Uniontown Newspapers, Inc. and Paul Sunyak, a reporter for Uniontown Newspapers, (collectively referred to as Petitioners), commenced an original action in this Court seeking to compel Lawrence Roberts, a member of the General Assembly of Pennsylvania (hereinafter referred to as Respondent/Representative Roberts), to make available certain telephone records for which Respondent received reimbursement from public funds appropriated by the General Assembly of Pennsylvania. In response to Petitioners' Petition for Review, Respondent filed preliminary objections in the nature of a demurrer, which are now before this Court.[1]

---

1. When deciding preliminary objections, we must accept as true all well-pled material allegations, as well as all inferences reasonably deduced therefrom. The court need not

The pertinent factual background is as follows. On April 10, 2000, Petitioners submitted a written request to Respondent to provide the Herald–Standard, a Uniontown, Pennsylvania newspaper owned by Uniontown Newspapers, copies of certain telephone records for which he sought reimbursement from the House of Representatives. Specifically, Petitioners requested Respondent's (1) itemized cellular telephone records, (2) long distance telephone records from his Harrisburg and Uniontown legislative offices, and (3) long distance records from his residential line.[2]

On May 9, 2000, Chief Counsel to the House Democratic Caucus wrote to Petitioners advising that (1) the Right–to–Know Act (Act)[3] was Pennsylvania's only statutory basis to obtain public records, (2) the records requested were not public records as defined by the Act, and (3) the House of Representatives was not an "agency" as defined by the Act. On those grounds, Respondent refused to make available the telephone records requested by Petitioners.[4]

It is admitted by both parties that, prior to the filing of Petitioners' petition for review, Respondent made his telephone records available to other members of the press. However, it is Respondent's position that he only made those records available under the condition that his "objectives of privacy and confidentiality of the communications were upheld in those disclosures." (Respondent's PO's, para. 7.) In addition, Respondent did offer to make available his telephone records to the Herald–Standard if the newspaper would assign a reporter other than Mr. Sunyak to review those documents.[5] The Herald–Standard rejected this condition.

Consequently, on September 1, 2000, Petitioners filed a petition for review arguing that they have a First Amendment[6] and Common Law right of access to Respondent's telephone records. Petitioners further contend that Respondent violated Petitioners' civil rights by providing the telephone records to other media personnel, but not to Petitioners. Respondent thereafter filed the present preliminary objections in the nature of a demurrer to all counts contained in the petition for review.

accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. *Milton S. Hershey Medical Center of Pennsylvania State University v. Medical Professional Liability Catastrophe Loss Fund,* 763 A.2d 945 (Pa. Cmwlth.2000).

2. In addition, Petitioners also telephoned Respondent's Uniontown and Harrisburg offices attempting to obtain the telephone records, but was denied access.

3. Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1—66.4.

4. The Parliamentarian of the House of Representatives, by further correspondence, informed Petitioners that the telephone records were not public records because House members were not required to submit itemized listings of phone numbers for reimbursement. In addition, on July 31, 2000, Chief Counsel to the House Democratic Caucus informed Petitioners that they would not receive the information requested unless they could identify legal authority that would give them unfettered access to the telephone records.

5. Petitioners allege that Respondent wrote a letter to Val Laub, publisher of the Herald–Standard, demanding that Mr. Sunyak be removed from participating in this story " 'on the grounds that Mr. Sunyak is unable to fairly and objectively report any news pertaining to me or my office.' " (Petitioners' petition for review, para. 20.)

6. U.S. Constitution, Amendment I.

### The Right-to-Know Act

While both parties agree that the Right-to-Know Act does not apply to Rep. Roberts, an analysis of the Act is nevertheless needed in order to adequately address the issue of a common law right of access. Respondent argues that the Right-to-Know Act is the only vehicle by which Petitioners may obtain public records, and, because Respondent does not fall within the purview of the Act, Petitioners are not entitled to the requested telephone records.

Section 2 of the Act, 65 P.S. § 66.2, provides that, "Every public record of an **agency** shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." (Emphasis added.) Section 1 of the Act, 65 P.S. § 66.1(1), defines "agency" as follows:

> (1) "Agency." Any department, board or commission of the executive branch of the Commonwealth, any political subdivision of the Commonwealth, the Pennsylvania Turnpike Commission, or any State or municipal authority or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function.

It is conceded by Petitioners that Roberts is a member of the legislative branch of government, and thus does not fall within the definition of "agency" as that term is defined by the Act. Petitioners maintain, however, that, even though the Act does not apply to Respondent, there is a common law right of access to public records that affords Petitioners access to Rep. Roberts' telephone records. Respondent argues, on the other hand, that there never was a common law right of access to **legislative** records, and, even if there was

such a right, it was subsumed and superseded by the Right-to-Know Act.

### Common Law Right of Access

While Petitioners set forth their argument in broad terms, i.e., that there is a general common law right of access to public records, we believe that our analysis must focus on a more narrow question, that is, whether there is a common law right of access to public records of the **legislative** branch of government. It is true that our courts have recognized the right to an examination of certain public records, either under a statutory grant or on common law principles. *See Commonwealth v. Fenstermaker,* 515 Pa. 501, 530 A.2d 414 (1987) (recognizing a common law right of access to judicial records in the form of affidavits in support of search warrants); *Wiley v. Woods,* 393 Pa. 341, 141 A.2d 844 (1958) (holding that citizens having a personal or property interest in the examination of public records may invoke that right under the Right to Know statute); *In re Simon,* 353 Pa. 514, 46 A.2d 243 (1946) (statute making military ballots and related materials public records subject to citizen inspection). However, we find no reported decision extending the right of access to public records of the legislative branch.

Petitioners rely heavily on *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) and *Fenstermaker,* to support the proposition that there is a common law right of access in Pennsylvania. In *Nixon,* members of the media sought access to certain tape recordings of President Nixon's White House conversations. These tapes were the subject of a criminal trial and were admitted into evidence. It was the media's position that a common law right existed which entitled them to access to the tapes. Petitioners cite us to a general passage contained in the opinion of the

U.S. Supreme Court wherein the Court stated that "[i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Id.* at 597. First, the Court cited several state court decisions to support this proposition, none of which were Pennsylvania decisions. Second, the use of the words "general right" does not automatically extend to **every** public record or document that exists.

In order to properly apply *Nixon,* the underlying fabric of the case must be analyzed to determine its precedential value. While the Supreme Court reiterated a broad proposition, the holding is actually narrow in its application, and limited to the specific circumstances of that case. *Nixon* dealt with a common law right of access to **judicial** records and the Court ultimately held that the press had no common law right to the tape recordings. Instrumental in the Court's decision was the critical fact that Congress had enacted a statute which governed disclosure and access to such materials. The Court held that the Presidential Recordings Act [7] obviated exercise of the common law right in that particular case. Because *Nixon* concerned judicial records, as opposed to legislative records, and because access to judicial records is a well-developed and acknowledged principle, *see Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), we believe that *Nixon* is inapplicable, and, therefore, does not control the outcome of the present case.

Petitioners' reliance on *Fenstermaker* is likewise misplaced. In that case, the press sought to inspect and copy affidavits supporting arrest warrants in a criminal case. In holding that the press had a right to the affidavits, the Pennsylvania Supreme Court relied on the well established right of access to records in the context of a **criminal** trial. *Fenstermaker* does not recognize a right of access to records outside of the criminal justice arena, and we decline to extend such a right to the legislative branch of government, especially in a civil proceeding.

Petitioners bring to our attention this Court's opinion in *PG Publishing Company v. County of Washington,* 162 Pa. Cmwlth. 196, 638 A.2d 422 (1994), arguing its similarities to the present case. In that case, newspapers sought and were granted access to itemized telephone bills of county officials. But *PG Publishing* is also inapplicable because it was decided squarely under the Right–to–Know Act, and we held that, because the county officials were deemed **part of an agency,** the Act applied, resulting in the discovery of the telephone records. That case did not even address a common law right to access. In the present case, Respondents are **not** covered by the Act, and, therefore, *PG Publishing* is of no avail to Petitioners.

 After an exhaustive review of appellate case law, and considering all of the circumstances of this case, we believe that there is no legal precedent to support the proposition that there is a common law right of access to legislative records. Petitioners have failed to provide this Court with any authority to support the argument that a common law right of access to legislative records exists in this Commonwealth. As a result, the common law does not entitle Petitioners to Respondents' telephone records. We next consider whether, as Petitioners claim, Rep. Roberts violated Petitioners' civil rights pursuant to 42 U.S.C. § 1983, thus requiring us to reach a different result.

---

7. 44 U.S.C. § 2107

### Section 1983 Claim

■ In addition to their claim of a common law right of access to public records, Petitioners included in their "complaint" a second count for a civil rights violation under 42 U.S.C. § 1983, alleging certain constitutional violations stemming from Respondent's refusal to allow Petitioners access to Respondent's telephone records. Petitioners' allegations are as follows: (1) Rep. Roberts deprived Petitioners of their *equal* protection right, by denying them equal access to government records which is secured by the First[8] and Fourteenth Amendments to the United States Constitution,[9] and (2) Rep. Roberts' refusal to allow access to his telephone records was in retaliation for Petitioners' exercise of their constitutionally protected right of free speech.[10] As such, Petitioners ask this Court for declaratory and injunctive relief by way of ordering Rep. Roberts to allow Petitioners access to his telephone records.

Respondent filed preliminary objections to Petitioners' Section 1983 claims, arguing that his conduct with respect to the telephone bills was not committed under color of state law, and did not amount to state action; and, even if it did, Respondent took no actions that deprived Petitioners

of any federal right which they had. Respondent also argues that, if we were to find that his actions were performed under color of state law, he would enjoy legislative immunity from suit pursuant to the Speech or Debate Clause of Article II, § 15 of the Pennsylvania Constitution.

■ We begin with an analysis of 42 U.S.C. § 1983.[11] Section 1983 does not *create* substantive rights, but provides a remedy for the violation of rights created by federal law. *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). A prima facie case under Section 1983 requires a plaintiff to demonstrate that: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law. *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Normally, before a court reaches the issue of a violation of a federal right, however, a determination must be made as to whether the person alleged to have violated the plaintiff's rights acted under "color of state law."

■ The United States Supreme Court has grappled with the meaning of "color of state law" for many years, and, as the Third Circuit Court of Appeals has outlined, the basic and clear requirement is as

---

**8.** In the petition for review, Petitioners alleged that they had a First Amendment right of access to Respondent's telephone records. It appears, however, that Petitioners have abandoned this claim as they do not argue this issue in their brief. Even if we were to reach this issue, we would hold that there is no First Amendment right of press access to government-held information. *See Houchins v. KQED, Inc.,* 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978).

**9.** U.S. Constitution, Amendment XIV.

**10.** It is Petitioners' position that Respondent denied them equal access to the telephone records because he was "displeased" with

Mr. Sunyak's previous articles about Representative Roberts which appeared in the Herald–Standard.

**11.** The text of 42 U.S.C. § 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

follows: "that the defendant in a § 1983 action ha[s] exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Groman v. Township of Manalapan,* 47 F.3d 628, 638 (3rd Cir.1995) (quoting *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)); that "[t]he issue is not whether the state was involved in some way in the relevant events, but whether the action taken can be fairly attributed to the state itself[,]" Daily, 47 F.3d at 368 (citing *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)); and that, "'whether the State provided a mantle of authority that enhanced the power of the harm—causing individual actor.'" Daily, 47 F.3d at 368 (quoting *NCAA v. Tarkanian,* 488 U.S. 179, 192, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988)).

As the courts have recognized, the color of state law analysis can be as arduous as it is compelling. Respondent vehemently argues that he was not acting under color of state law in either placing his telephone calls or by refusing to allow access to the itemized copies of his phone bills. He maintains that a legislator acts under color of state law only when "conducting official legislative business, such as exercising official powers of appointment or removal, or deliberating about proposed legislation." (Respondent's Memorandum of Law in Support of P.O.'s at 14.) (Emphasis omitted.) Petitioners, on the other hand, argue that Respondent did act under color of state law in making those telephone calls for which he was reimbursed and then regulating access to those very records.

Since we are addressing this issue only with regard to those telephone calls which were reimbursed by the General Assembly, we would have to assume that those calls concerned legislative matters, and therefore, with regard to those calls, we conclude that such action was taken under color of state law. However, even reaching that conclusion, Petitioners' Section 1983 claim must still fail because no federal right of Petitioners has been violated by the Respondent.

■ Petitioners argue that Rep. Roberts violated their equal protection rights by granting access to his telephone records to other media outlets while denying the Herald–Standard newspaper access to the same records. The equal protection clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The essence of the constitutional principle of equal protection is that like persons in like circumstances must be treated similarly. *Curtis v. Kline,* 542 Pa. 249, 666 A.2d 265 (1995). However, it does not require that *all* persons under *all* circumstances enjoy *identical* protection under the law. *James v. SEPTA,* 505 Pa. 137, 477 A.2d 1302 (1984).

■ Therefore, in order to properly state an equal protection claim, a plaintiff must allege that he is receiving different treatment from that received by other similarly situated individuals. *Myers v. Ridge,* 712 A.2d 791 (Pa.Cmwlth.1998), *appeal denied,* 560 Pa. 677, 742 A.2d 173 (1999). A plaintiff must also show intentional discrimination because of the membership in a particular class, not merely that he was treated unfairly as an individual. *Id.*

■ In the present case, Petitioners assert that their equal protection rights were violated when Respondent offered his telephone records to other news media outlets while denying access to the Herald–Standard. It is undisputed, however, that Respondent also offered access to the phone records to the Herald–Stan-

dard, albeit with a restriction on which reporter would be able to view the records, and that it declined. Since Herald–Standard was offered access to the records, and because we find that Respondent did not violate a federally secured right by limiting access to the records, we conclude that the Herald–Standard will be unable to establish a constitutional deprivation sufficient to withstand a demurrer. Mr. Sunyak's equal protection claim must also fail. In order for Mr. Sunyak to properly plead an equal protection violation, he must establish intentional discrimination because of his membership in a particular class. Here, Mr. Sunyak concedes that he is being denied access as an individual. Therefore, Mr. Sunyak's equal protection claim is likewise legally deficient.

Petitioners rely on *Capital Cities Media, Inc. v. Chester,* 797 F.2d 1164 (3rd Cir.1986) to support their proposition that they have pled a viable equal protection claim.[12] That case, however, is clearly distinguishable. In *Capital Cities,* the appellants filed, *inter alia,* an equal protection claim against Pennsylvania's Department of Environmental Resources alleging that the agency selectively released certain government documents to members of the media other than appellants. The district court dismissed the equal protection claim holding that the appellants failed to adequately plead a cause of action. The Third Circuit merely reversed and remanded for further fact-finding on the equal protection issue. The court concluded that a *state agency,* i.e., Pennsylvania's Department of Environmental Resources, *may* be liable for the selective release of public government documents concerning

water contamination. In contrast, the present case concerns telephone bills of an individual member of the General Assembly, as opposed to government records of a state agency. We therefore decline to extend the holding of *Capital Cities* to an elected public official concerning non-governmental documents. However, even if we were to decide that Petitioners' equal protection arguments were viable, Petitioners' Section 1983 claim would be barred under the shield of legislative immunity.

### *Legislative Immunity*

▮▮▮▮▮▮ Although Respondent argues that, if we were to decide he acted under the color of state law, the Speech or Debate Clause of the *Pennsylvania* Constitution would provide him with immunity, we believe that the proper authority to support such a proposition lies with the jurisprudence of the United States Supreme Court.[13]

The U.S. Supreme Court, in *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), discussed, at length, the purpose and rationale behind legislative immunity. In essence, the Court explained that immunity is needed to ensure that the legislative function performs without fear of outside interference. The *Tenney* Court, therefore, stated that to preserve legislative independence, "legislators engaged in the sphere of legitimate legislative activity" should be protected not only from the consequences of litigation's results but also from the burden of defending themselves. As the Supreme Court stated in *Powell v. McCormack,* 395 U.S.

---

**12.** As the parties are well aware, a decision by the Third Circuit is non-binding, but merely persuasive authority.

**13.** It is well settled that state law cannot be invoked in order to frustrate the application of federal law, such as attempting to lessen

the availability of Section 1983. *See Schnupp v. Port Authority of Allegheny County,* 710 A.2d 1235 (Pa.Cmwlth.1998), and *Heinly v. Commonwealth,* 153 Pa.Cmwlth. 599, 621 A.2d 1212 (1993).

486, 503, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), legislative immunity "insures that legislators are free to represent the interests of their constituents without fear that they will be later called to task in the courts for that representation."

Tenney also recognized that state legislators enjoy common law immunity from liability for their legislative acts, and, in addition, concluded that Congress did not intend Section 1983 to abrogate this common law immunity. Even though the Tenney case involved an action for damages under Section 1983, the Court in Supreme Court of Virginia v. Consumers Union of the United States, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980), extended the Tenney holding to include Section 1983 actions seeking declaratory or injunctive relief.

In the present case, Petitioners filed a Section 1983 action seeking declaratory and injunctive relief against Rep. Roberts in his official capacity. Respondent would therefore be immune from suit if his actions were within the "sphere of legitimate legislative activity." Even considering that Rep. Roberts, by placing the telephone calls at issue in this suit, and restricting access to those records, was acting under color of state law, the question now is whether those actions constituted "legitimate legislative activity" to which immunity would attach. We believe that it does.

Although there is no case directly on point, we believe that the rationale supporting legislative immunity is easily applied to the present case. We must keep in mind that the very core of legislative immunity is the protection of " 'the integrity of the legislative process by insuring the independence of individual legislators.' " Eastland v. United States Servicemen's Fund, 421 U.S. 491, 502, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975) (quoting United States

v. Brewster, 408 U.S. 501, 507, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972)). Moreover, as the United States Supreme Court stated in Powell:

The purpose of the protection afforded legislators is not to forestall judicial review of legislative action but to insure that legislators are not distracted from or hindered in the performance of their legislative tasks by being called into court to defend their actions.

Powell, 395 U.S. at 505, 89 S.Ct. 1944. Included within the legislative process is drafting legislation and debating bills on the floor of the House. However, we believe that the "sphere of legislative activity" extends much farther than merely the debating and drafting of laws. It is not uncommon for legislators to spend a majority of time speaking with other lawmakers and constituents, which includes telephone conversations, regarding proposed legislation or other matters of concern. As the Eastland Court concluded that there needs to be protection of "the integrity of the legislative process," discussions with other lawmakers and constituents is surely included within the ambit of "legislative process." Therefore, we hold that business telephone calls made by members of the General Assembly fall within the meaning of "legitimate legislative activity." Consequently, the act of Rep. Roberts denying access to his business telephone records is likewise within the sphere of legislative activity.

In conclusion, since Rep. Roberts is entitled to legislative immunity pursuant to the United States Supreme Court precedent outlined above for his actions pertaining to his business telephone calls, and his denial of access to those records, we sustain Respondent's preliminary objections, and Petitioners' petition for review is here-

by dismissed.[14]

Judge PELLEGRINI concurs in the result only.

### ORDER

NOW, May 31, 2001, Representative Roberts' preliminary objections in the nature of a demurrer in the above-captioned matter are sustained, and Petitioners' petition for review is hereby dismissed.

14. Because of the disposition of this case, we need not address Petitioners' retaliation argument.