**COMMONWEALTH of Pennsylvania, acting by Attorney General D. Michael FISHER, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

Commonwealth Court of Pennsylvania.

Argued March 10, 1999.

Decided April 13, 1999.

---

John M. Abel, Senior Deputy Atty. Gen., Philadelphia, for plaintiff.

Arthur Makadon, Philadelphia, for defendant.

Before COLINS, President Judge, and DOYLE, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., FLAHERTY, J. and LEADBETTER, J.

PELLEGRINI, Judge.

Presently before this Court are the preliminary objections of Allstate Insurance Company (Allstate) to the complaint filed by the Commonwealth of Pennsylvania (Commonwealth) alleging that Allstate has violated the provisions of the Unfair Trade Practices and Consumer Protection Law (Consumer Protection Law)[1] and has engaged in the unauthorized practice of law under 42 Pa.C.S. § 2524.[2]

---

1. Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. § 201–1–201–9.3. The Attorney General brought the action pursuant to the authority granted to him in Section 4 of the Consumer Protection Law, which provides:

> Whenever the Attorney General or a District Attorney has reason to believe that any person is using or is about to use any method, act or practice, declared by section 3 of this act to be unlawful, and that proceedings will be in the public interest, he may bring an action in the name of the Commonwealth against such person to restrain by temporary or permanent injunction the use of such method, act or practice.

2. 42 Pa.C.S. § 2524 provides, in pertinent part:

> [A]ny person, including but not limited to, a paralegal or legal assistant, who within this Commonwealth shall practice law, or who

As alleged in the Commonwealth's complaint, since 1995, Allstate, under its claim handling procedures, contacts individuals (claimants) who have or may have claims against Allstate policyholders attempting to have them settle their claims quickly by telling them they will offer them a fair amount, that they don't need an attorney and obtaining authorization from claimants to obtain their medical and employment records. As part of this procedure, the complaint alleges that Allstate distributes to these claimants three one-page documents; a "Quality Service Pledge" (Pledge), a letter entitled "Do I Need an Attorney?" (Letter), and a form entitled "Authorization to Furnish Medical/Employment Information" (Authorization).

The Pledge [3] states that because a claimant has been involved in an accident, Allstate is determined to provide that claimant with "quality service" which includes keeping the claimant apprised of the claim process and answering any questions that a claimant may have. It also provides that Allstate will conduct a quick and fair investigation into the facts of the case and will make an appropriate offer of compensation to the claimant. The Pledge concludes by stating, "Your claim representative is dedicated to carrying out this Quality Service Pledge."

The Letter is a document containing five questions and answers on whether a claimant should hire an attorney.[4] The Letter

shall hold himself out to the public as being entitled to practice law, or use or advertise the title of a lawyer, attorney at law, attorney and counselor at law, counselor, or the equivalent in any language, in such a manner as to convey the impression that he is a practitioner of the law or a corporation complying with 15 Pa.C.S. Ch. 29 (relating to professional corporations), commits a misdemeanor of the third degree upon a first violation.

3. The full text of the "Quality Service Pledge" provides:

Because you have been involved in an accident with an Allstate policyholder, we will provide you with quality service. In an effort to provide you with this quality service, we promise you the following:

1) We will fully explain the process, take the time to answer all questions and concerns you may have, and keep you informed throughout the claims process.

2) We will conduct a quick, fair investigation of the facts in your case.

3) To the extent that our policyholder was at fault in the accident:

We will assist you in providing for the repair of your vehicle and in determining your temporary transportation needs.

If you qualify, we will make an appropriate offer of compensation for any injuries you may have suffered.

Your claim representative is dedicated to carrying out this Quality Service Pledge.

4. The full text of the Letter provides:

(1) **Am I required to hire an attorney to handle my claim?**

No. In fact each year Allstate settles claims directly with many accident victims with no attorneys involved in the claim settlement process. In cases where the accident victim is a minor, however, the law may require that the claim settlement be approved in court. In those specific circumstances Allstate will provide an attorney at no cost to you in order to obtain the court approval.

(2) **Will an Attorney make the claim settlement process faster for me?**

A recent study by the Insurance Research Council found that people who settle claims without an attorney generally settle their claims more quickly than those who hire attorneys do.

(3) **How much are attorney's fees and who pays for them?**

Attorneys often take up to one-third of the settlement you receive after deducting expenses incurred. If you settle directly with Allstate, however, the total amount of the settlement is yours.

(4) **If I don't get an attorney now, can I still get one later?**

You may hire an attorney at any time in the process. In each state, there is a time limit (generally no less than one year following the accident) for taking legal action against our policyholder. If an attorney believes he or she can achieve a higher settlement, you can then see whether the attorney is able to accomplish that. And, you may wish to hire an attorney on the condition that the contingent fee apply only to the settlement amount in excess of what Allstate offered you without the attorney's assistance.

(5) **Should I seek the advice of an attorney?**

Whether you should retain an attorney is your decision. An attorney may be able to

reiterates that a claimant is not required to hire an attorney and that the Insurance Research Council indicates that claims may actually be settled quicker in cases where an attorney is not involved. It provides that the final decision on whether to retain an attorney is the claimant's, that an attorney may offer valuable advise and may be able to advance the claimant's interests, but that a claimant may wish to seek a settlement with Allstate first and then contact an attorney making it a condition that the attorney's fees apply only to a settlement amount above that which was initially offered by Allstate.

The Authorization form provides that the claimant authorizes Allstate to contact employers, medical providers or any person with knowledge of the claimant's injuries to provide medical and employment information to Allstate. The form also provides that Allstate and its representatives will use the information to verify and evaluate the claim in order to determine an appropriate resolution. Further, it states that the authorization will remain valid until the claim with Allstate is "legally concluded" but that the claimant may revoke the authorization at any time by notifying Allstate in writing.

Based on these facts in Count I of its complaint, the Commonwealth alleges that Allstate makes representations in these three documents that are unfair, deceptive, misleading and create the likelihood of confusion constituting violations of Sections 2(4)(ii)–(iii), (v) and (xxi), 73 P.S. §§ 201–2(4)(ii)–(iii), (v), (xxi), of the Consumer Protection Law[5] because, *inter alia*, Allstate:

- misrepresents to claimants that it is acting in their interest, when, in fact, it is a legally adversarial position relative to third party claimants when it is acting in its own interest or in the interest of its insured;

- misrepresents to claimants that it is in the claimant's best interest to deal directly with Allstate and that hiring an attorney is not necessary because their claim may be settled more quickly without an attorney and will result in a higher net settlement;

- fails to disclose that a claimant may waive valuable rights by not contacting an attorney or that retaining an attorney may result in Allstate paying a higher gross settlement; and

- discloses that information gathered under the authorization is not used simply in the claims process but may be used against the claimant in litigation.

The Commonwealth alleges that all of these misrepresentations or failure to disclose by Allstate is part of a willful, calculated effort on Allstate's part to mislead

---

provide valuable advice, and may be able to advance your interests. However, keep in mind that attorneys often take up to one-third after deducting expenses incurred of the settlement you receive from an insurance company. You may wish to seek an offer *from Allstate first, and when retaining* an attorney make a condition that the contingent fee apply only to the settlement amount in excess of what Allstate offered to you without an attorney's assistance.

5. Section 2(4) of the Consumer Protection Law provides, in pertinent part:
"Unfair methods of competition" and "unfair or deceptive acts or practices" mean one or more of the following.
* * *
(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship or approval or certification of goods or services;
(iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;
* * *
(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have.
* * *
(xxi) Engaging in other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

claimants to their detriment and for the benefit of Allstate.

In Count II, the Commonwealth alleges that Allstate has engaged in the unauthorized practice of law by making the above representations because they involve the exercise of legal judgment regarding the merits of the claim filed by third parties and the necessity of retaining an attorney to pursue those claims.

Based on those two counts, the Commonwealth seeks a declaration that Allstate has violated the Consumer Protection Law and has engaged in the unauthorized practice of law. As a remedy, it seeks an order:

- preventing Allstate from designating itself as the claim representatives of third parties, from representing that the Insurance Research Council is an independent, objective source of information;
- directing Allstate to conspicuously set forth a claimant's right to counsel and that a claimant may be waiving valuable rights by not contacting an attorney, and to disclose that the Insurance Research Council is privately funded by insurance companies; and
- to have Allstate refrain from further violations of the Consumer Protection Law and to pay civil penalties to the Commonwealth for each willful violation of the Consumer Protection Law.

■■■ In response to the Commonwealth's complaint, Allstate has filed preliminary objections in the nature of a demurrer to both Counts contained in the Complaint.[6] In its preliminary objection to Count I, it argues that the actions of insurance companies are regulated exclusively by the Unfair Insurance Practices Act (UIPA)[7] and claims such as the ones brought by the Commonwealth here must be brought under the UIPA by the Insurance Commissioner. Because UIPA is exclusive, it contends that the Consumer Protection Law does not apply to the unfair or deceptive acts of insurance companies and, correspondingly, the Attorney General has no jurisdiction to maintain this action.[8]

Contrary to Allstate's contention that UIPA is the exclusive remedy for fraudulent insurance practices and that an action cannot be brought under the Consumer Protection Law, Section 13 of UIPA explicitly states that it is not the exclusive remedy providing that "the powers vested in the [Insurance] Commissioner by this act are additional to any other powers to enforce any penalties, fines or forfeitures authorized by law with respect to methods, acts, practices declared to be unfair and deceptive." By plainly providing that powers vested in the Insurance Commissioner **are additional** to any other powers authorized by law with respect to methods, acts or practices that are unfair or deceptive, it cannot be clearer that the General Assembly did not intend that claims such as the ones brought by the Commonwealth here must be brought under the UIPA by the Insurance Commissioner.

---

**6.** Preliminary objections in the nature of a demurrer admit all well-pleaded facts and all inferences reasonably deduced therefrom. We will sustain the objections only if the law clearly does not permit recovery on the facts alleged. All doubts shall be resolved in favor of overruling the demurrer. *Africa v. Horn,* 701 A.2d 273 (Pa.Cmwlth.1997).

**7.** Act of July 22, 1974, P.L. 589, *as amended,* 40 P.S. §§ 1171.1–1171.15.

**8.** Allstate also raises in its preliminary objections to Count I that its communications were constitutionally protected and that its commu-

nications to third parties do not constitute "trade" or "commerce" as those terms are defined in the Consumer Protection Law. Allstate neither briefed these issues nor raised them in oral argument before this Court. Consequently, those issues are abandoned and will not be considered by this Court. *See Jackson v. Indiana University of Pennsylvania,* 695 A.2d 980 (Pa.Cmwlth.1997); *Commonwealth v. Rodgers,* 413 Pa.Super. 498, 605 A.2d 1228, *petition for allowance of appeal denied,* 532 Pa. 655, 615 A.2d 1311 (1992) (issue identified but not properly developed in brief is abandoned).

Moreover, there is nothing in any of the language of the Consumer Protection Law that insurance companies are not covered by its provisions, and the General Assembly could have included such language if it desired because the Consumer Protection Law was reenacted after UIPA. *See also Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 458 n. 5, 329 A.2d 812, 815 ("there is no indication of an intent to exclude classes or classes of transactions from the ambit of the Consumer Protection Law. When the Legislature deemed it necessary to make an exception from the Law's scope, it did so in clear language.") [9]

■ In *Pekular v. Eich*, 355 Pa.Super. 276, 513 A.2d 427 (1986), *petition for allowance of appeal denied*, 516 Pa. 635, 533 A.2d 93 (1987), our Superior Court also reached an identical conclusion when faced with the issue of whether the UIPA was the sole manner of redress for private individuals against allegedly unfair and deceptive practices of insurance companies. The private-party plaintiffs in *Pekular* filed a complaint against State Farm Insurance Company and Eich, its claim representative, in which Count III of that complaint sought monetary damages under the Consumer Protection Law. State Farm filed preliminary objections to Count III alleging that because the allegations in that count fell within the purview of acts and practices that are prohibited by the UIPA, the plaintiffs could not maintain a separate action under the Consumer Protection Law. State Farm, much like Allstate does here, argued that there is an irreconcilable conflict between the UIPA and the Consumer Protection Law, which according to the rules of statutory construction, required that the more specific

provisions of the UIPA be given effect over the more general provisions of the Consumer Protection Law.

The Superior Court disagreed that there was an irreconcilable conflict, stating that "the limited penalties of the [Unfair Insurance Practices Act] do not represent the sole and exclusive deterrent to alleged unfair or deceptive acts of insurers and their agents," and held instead that the plaintiffs could maintain a cause of action under the Consumer Protection Law even though the actions alleged were covered by the UIPA. The Superior Court also stated:

> Our conclusion that there is no inherent irreconcilable conflict is supported by the fact that the UIPA contains no provision either stating or implying that the power vested in the Insurance Commissioner represents the exclusive means by which an insurer's unfair or deceptive acts are to be penalized or that the insured is precluded from seeking private compensation for damages incurred. Further, as noted previously, we are mindful of the fact that our Legislature did not see fit to exclude insurers, insurance agents, or insurance transactions from the broad scope of CPL regulation in either the original enactment of the CPL in 1968 or, more importantly, in its subsequent reenactment in 1976, a full two years after the enactment of the UIPA.

*Id.* at 433–34. *See also Hardy v. Pennock Insurance Agency, Inc.*, 365 Pa.Super. 206, 529 A.2d 471 (1987) (the UIPA does not represent the sole and exclusive source of statutory redress of alleged unfair or deceptive acts of insurers and their agents

---

**9.** We also note that Allstate's reliance on *D'Ambrosio v. Pennsylvania National Mutual Insurance Company*, 494 Pa. 501, 431 A.2d 966 (1981), for the proposition that the Insurance Commissioner has the exclusive authority to regulate insurance companies is misplaced. Our Supreme Court merely held in that case that it would not judicially create a private cause of action in trespass seeking

damages for emotional distress and punitive damages against an insurance company for its alleged bad faith actions. *See also Pekular, supra* (Court in *D'Ambrosio* concerned only with supplementing the UIPA with, as yet, unrecognized common law claims and that case does not preclude an action under the Consumer Protection Law).

and such alleged acts may be redressed under the Consumer Protection Law).

Although *Pekular* involved a private cause of action against an insurance company under Section 9.2, 73 P.S. § 201–9.2, of the Consumer Protection Law, we find that its reasoning is equally applicable here and hereby adopt it. We see no reason, therefore, why the Commonwealth should not be able to bring a similar claim under Section 4 of the Consumer Protection Law, 73 P.S. § 201–4, even though its alleged actions may also be prohibited under the UIPA. Accordingly, Allstate's preliminary objections to the Attorney General's standing and jurisdiction to bring this case are overruled.

■ Allstate also demurrers to Count II of the complaint and contends that its communications to third parties and the allegations of the complaint do not constitute the unauthorized practice of law under 42 Pa. C.S. § 2524. The Commonwealth asserts, however, that Allstate has assumed the role of claimant's counsel by promising to deliver services that would ordinarily require the exercise of legal judgment, such as being their claim representative, answering questions, giving legal advice about retaining an attorney and making a determination about whether compensation is due and the amount of such compensation.

Our Supreme Court in *Dauphin County Bar Association v. Mazzacaro*, 465 Pa. 545, 351 A.2d 229 (1976), defined what is meant by the "practice of law" in the following terms:

> Marking out the abstract legal boundaries of legal practice would be an elusive, complex task "more likely to invite criticism than achieve clarity." The threads of legal consequences often weave their way through even casual contemporary interactions. There are times, of course, when it is clearly within the ken of lay persons to appreciate the legal problems and consequences involved in a given situation and the factors which should influence necessary decisions. No public interest would be advanced by requiring these lay judgments to be made exclusively by lawyers. Where, however, a judgment requires the abstract understanding of legal principles and a refined skill for their concrete application, the exercise of legal judgment is called for. While at times the line between lay and legal judgments may be a fine one, it is nevertheless discernable. Each given case must turn on a careful analysis of the particular judgment involved and the expertise that must be brought to bear on its exercise.

*Id.* at 553, 351 A.2d at 233 (citations omitted).

We agree with Allstate that the complaint fails to state a claim that Allstate is engaging in the practice of law. Although it does state in its pledge that it will evaluate the facts of the case and offer what it believes to be a fair offer of compensation, nothing of the allegations in the complaint can be construed such that Allstate is offering legal advice to claimants or is rendering legal judgment regarding the merits of any claim. At best, the complaint may be summarized as alleging that the Commonwealth believes that Allstate misrepresents that it will perform an unbiased review of the case and is discouraging claimants from hiring attorneys. Even if those allegations are proven to be true and Allstate has engaged in unfair or deceptive practices that create the likelihood of confusion or misunderstanding, the complaint does not set forth that Allstate is engaging in the practice of law or is offering legal advice in its communications to third party claimants. As a result, Allstate's preliminary objections to Count II of the complaint are sustained and Count II is dismissed.

An appropriate order will be entered.

### *O R D E R*

AND NOW, this 13th day of April, 1999, upon consideration of Defendant's prelimi-

nary objections to Plaintiff's complaint, it is ordered that Defendant's preliminary objections to Count I of Plaintiff's complaint are overruled. It is further ordered that Defendant's preliminary objections to Count II of Plaintiff's complaint are sustained.