839 A.2d 185

UNIONTOWN NEWSPAPERS, INC., t/d/b/a the
Herald–Standard, a Corporation, and Paul
Sunyak, an Individual, Appellants,

v.

Lawrence ROBERTS, in his Capacity as a Member of
the General Assembly of Pennsylvania, Appellee.

Supreme Court of Pennsylvania.

Argued May 15, 2003.

Decided Dec. 24, 2003.

234

Charles Kelley, Thomas A.P. Hayden, Barbara A. Scheib, for Uniontown Newspapers Inc. and Paul Sunyak.

Jonathan F. Bloom, Jason K. Cohen, C. Clark Hodgson, Philadelphia, for Lawrence Roberts.

Before CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## *OPINION*

Justice EAKIN.

On April 10, 2000, Uniontown Newspapers, Inc., and its reporter, Paul Sunyak, submitted a written request to Lawrence Roberts, a member of the Pennsylvania General Assembly, for copies of telephone records for which Representative Roberts sought reimbursement from the House of Representatives. Specifically, appellants requested appellee's cellular records, long distance records from his Harrisburg and Uniontown legislative offices, and long distance records from his residential line.

Appellants allege that on May 15, 2000, appellee informed the editor he would allow the newspaper to examine the records if a different reporter was assigned to review them. The newspaper rejected this condition. The same day, appellee wrote a letter to the publisher urging the paper to prohibit Sunyak from reporting on appellee's activities. On June 8, the newspaper submitted a written request for the records to the Office of the Clerk, the Comptroller, and the Bipartisan Management Committee of the House of Representatives. On June 10, appellee provided copies of the records to a local radio station, and stated he was withholding the records from the newspaper because he believed it was biased. On June 13, appellee told the radio station he allowed reporters from other newspapers to examine the records. On June 16, appellee stated he would consider providing the records if the newspaper's counsel absolved him of wrongdoing in connection with them.

The Parliamentarian of the House of Representatives told appellants he did not have access to the information. Chief Counsel to the House Democratic Caucus wrote to appellants, advising: (1) the Right to Know Act (Act), 65 P.S. §§ 66.1–66.4, was Pennsylvania's only statutory basis to obtain public records; (2) the records requested were not "public records" as defined by the Act; and (3) the House of Representatives was not an "agency" as defined by the Act.

On September 1, 2000, appellants filed a petition for review with the Commonwealth Court, requesting an order declaring their constitutional and common law right of access to these records (Count I). Appellants also alleged appellee violated their equal protection rights, under 42 U.S.C. § 1983, by selectively denying access to the records (Count II), and retaliated against them for exercising their First Amendment right of free speech (Count III). Appellee filed preliminary objections in the nature of a demurrer, which the Commonwealth Court sustained. *Uniontown Newspapers, Inc. v. Roberts,* 777 A.2d 1225 (Pa.Cmwlth.2001). Appellants have appealed, and raise the following issues:

(1) Whether there is a common law right of access by the citizens of Pennsylvania to public records held by, or otherwise maintained for, the legislative branch of government in Pennsylvania, including but not limited to state legislators in their individual, official capacities.

(2) Whether there is a right of access by the citizens of Pennsylvania to public records held by state legislators or maintained on behalf of the legislative branch of government, under the First Amendment to the United States Constitution or the Pennsylvania Constitution, Article I, § 7.

(3) Whether a "legitimate legislative activity" under the Speech or Debate Clause of the United States Constitution extends to the act of a state legislator distributing his telephone expense records.

(4) Whether it is clear from doubt from all of the facts pled in the petition for review, and from all reasonable inferences drawn therefrom, that Uniontown Newspapers will be un-

able to prove facts legally sufficient to establish a right to relief under 42 U.S.C. § 1983 for an equal protection violation (Count II).

The Commonwealth Court acknowledged a common law right to examine certain judicial records. *See Commonwealth v. Fenstermaker*, 515 Pa. 501, 530 A.2d 414 (1987) (common law right of access to affidavits in support of search warrants); *Wiley v. Woods*, 393 Pa. 341, 141 A.2d 844 (1958) (citizens with personal or property interest in public records may invoke right under Right to Know Act); *Appeal of Simon*, 353 Pa. 514, 46 A.2d 243 (1946) (statute made military ballots and related materials public records subject to citizen inspection). The Court also analyzed *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (concerning tape recordings of White House conversations), and concluded the cited cases implicated either a common law right to *judicial* records or a statutory grant of access; there was no common law right to *legislative* records.

Appellants contend the Commonwealth Court erred when it "ignored each and every indicia of access as erected and applied by this Court in *Fenstermaker*." In *Fenstermaker*, this Court considered whether a common law right of access to public judicial records existed, and developed a three-part test: (1) whether the material sought to be disclosed is public; (2) whether a common law right of access may be asserted; and (3) whether access to the material is outweighed by the circumstances warranting closure. The Court, relying upon *Nixon v. Warner Communications, Inc., supra*, stated:

Accordingly, we are persuaded that the instant case presents a situation where the common law right of access may appropriately be asserted, and that the interests of the public in observing the functioning of the criminal justice system are sufficient as a basis upon which to assert such a right. As stated, however, in *Nixon v. Warner Communications, Inc., supra*, the right to inspect judicial documents is not absolute, and courts do have supervisory power over their records and files. Where the presumption of openness attached to a public judicial document is outweighed by

circumstances warranting closure of the document to public inspection, access to the document may be denied.

*Fenstermaker,* at 420. Thus, a common law right to access public *judicial* records was recognized in Pennsylvania, but significantly, the scope of *Fenstermaker* and its progeny has never been enlarged to include the *legislative* branch.

Considering statutory claims, this Court has held, unequivocally, "the General Assembly codified and clarified the common law right of public access to public records" when it enacted the Right to Know Act. *North Hills News Record v. Town of McCandless,* 555 Pa. 51, 722 A.2d 1037, 1038 (1999) (citing *Community College of Philadelphia v. Brown,* 544 Pa. 31, 674 A.2d 670, 671 (1996); *Wiley v. Woods,* 393 Pa. 341, 141 A.2d 844, 849 (1958)).[1] In *McMullan v. Wohlgemuth,* 453 Pa. 147, 308 A.2d 888 (1973), we stated:

> Appellees also contend they are entitled to the information they seek under the common law of this Commonwealth. Such an assertion must be dismissed. As this Court said in *Mooney v. Temple University Board of Trustees,* 448 Pa. 424, 429–430, n. 10, 292 A.2d 395, 398, n. 10 (1972): "It is unquestioned that the right to inspect public documents was no broader at common law than it is present under the statute ('Right to Know Act', *supra*); it may have been more restricted by being limited only to persons with a 'personal or property interest' in the matter sought to be

---

1. At the time of this litigation, § 2 of the Act provided "[e]very public record of an agency shall, at reasonable times, be open for the examination and inspection by any citizen of the Commonwealth of Pennsylvania." 65 P.S. § 66.2. A party which asserts a right of disclosure pursuant to the Act has the burden of proving the requested material is a public record generated by an agency as defined by the Act. *North Hills,* at 1039; 65 P.S. § 66.1.

 "Agency" was defined as:

 Any department, board or commission of the executive branch of the Commonwealth, any political subdivision of the Commonwealth, the Pennsylvania Turnpike Commission, or any State or municipal authority or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function.

 65 P.S. § 66.1. The Act has since been amended. *See* Act of June 29, 2002, P.L. 663.

disclosed. *Wiley v. Woods,* 393 Pa. 341, 347–350, 141 A.2d 844, 848–849 (1958). *Therefore, disposition of appellant's claim under the Inspection and Copying Records Act ('Right to Know Act,' supra) a fortiorari resolves appellants' claim at common law."* (emphasis added.)

*Id.,* at 895; *see also* 1 Pa.C.S. § 1504 ("In all cases where . . . anything is directed to be done by any statute, the directions of the statute shall be strictly pursued. . . .").

■ Cases under the Right to Know Act have not undone the previously recognized common law right of access to specific public judicial records. *Fenstermaker,* at 419–20 (Act "pertains only to agencies rather than to the judiciary"). If the General Assembly wished to create a right to access similar legislative information, it would have done so through the Act. *See, e.g., Consumers Education and Protective Ass'n v. Nolan,* 470 Pa. 372, 368 A.2d 675, 680–81 (1977) (General Assembly defined "agency" to include General Assembly in "Sunshine Act," Act of July 19, 1974, P.L. 486, 65 P.S. §§ 261–269, *repealed* Act of July 3, 1986, P.L. 388). Any right of access under the common law was supplanted when the General Assembly defined the term "agency"; it did not include members of the General Assembly. To conclude such access exists would be tantamount to rewriting the definition of "agency" in the Act. The Act embodies a policy of broad disclosure, but we are constrained by the words chosen by the General Assembly. *North Hills,* at 1040 n. 4. Moreover, the General Assembly already provides public access to certain information. Accordingly, the Commonwealth Court properly determined there is no common law right of access to legislative records.

■ Appellants next contend the Commonwealth Court abused its discretion in concluding appellants abandoned their First Amendment claim by failing to argue the issue in their brief. Appellants initiated this action by invoking the Commonwealth Court's *original* jurisdiction pursuant to 42 Pa.C.S. § 761(a). Appellants' petition for review was in the nature of a complaint for declaratory judgment and "other relief as [the

Commonwealth Court] deems just and equitable." *See* Pa. R.A.P. 1502. Preliminary objections are permissible in an original jurisdiction action, Pa.R.A.P. 1516, and are to be made in accordance with the appropriate Rule of Civil Procedure. *See* Pa.R.A.P. 1517; *see also* Pa.R.C.P. 1028 (Preliminary Objections).

There is no requirement in the Rules of Civil Procedure that the non-moving party respond to a preliminary objection, nor must that party defend claims asserted in the complaint. Failure to respond does not sustain the moving party's objections by default, nor does it waive or abandon the claim. The Commonwealth Court failed to supply any legal basis or authority upon which to dismiss appellants' First Amendment claim on the basis appellants "abandoned" it. Appellee quotes *Commonwealth ex. rel. Fisher v. Allstate Ins. Co.*, 729 A.2d 135 (Pa.Cmwlth.1999), in support of the waiver conclusion: where a party "neither briefed these issues nor raised them in oral argument before this Court . . . those issues are abandoned and will not be considered by this Court." *Id.*, at 139 n. 8. However, the "party" referred to in *Fisher* was the *moving* party. Since appellants were not the moving party, their failure to respond to preliminary objections does not waive the issue. Accordingly, the Commonwealth Court erred to the extent it did not address this claim.

The Commonwealth Court also stated: "Even if we were to reach this issue, we would hold that there is no First Amendment right of press access to government-held information." *Uniontown Newspapers*, at 1230 n. 8 (citing *Houchins v. KQED, Inc.*, 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978)). In *Houchins*, a broadcast company sought access to a county jail to report on the jail's conditions and prisoners' grievances. The company asserted a special right of access to government-controlled sources of information was implied from the First Amendment. *See id.*, at 7–8, 98 S.Ct. 2588. Such access was alleged to be necessary to maintain an informed public as a safeguard against "misgovernment." *See id.*, at 8, 98 S.Ct. 2588. The Supreme Court unequivocally stated a right to gather news "affords no basis for the claim that the First

Amendment compels others ... to supply information." *Id.,* at 11, 98 S.Ct. 2588. The majority in *Houchins* concluded: "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Id.,* at 15–16, 98 S.Ct. 2588 (Stewart, J., concurring in judgment). The Court held the media has no special right of access different from or greater than that accorded to the public generally. *See id.,* at 16, 98 S.Ct. 2588. Relying on *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), this Court has concluded the press' right of access is no greater than the public's right of access. *See McLaughlin v. Philadelphia Newspapers,* 465 Pa. 104, 348 A.2d 376, 378–80 (1975) (noting Supreme Court first recognized limited constitutional right of access in *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)).

■ Therefore, the inquiry proceeds to the public's First Amendment right of access, which features two considerations:
First, because a " 'tradition of accessibility implies the favorable judgment of experience' " ... [courts are to consider] whether the place and process has historically been open to the press and general public. . . .

\* \* \*

Second, [courts are to consider] whether public access plays a significant positive role in the functioning of the particular process in question. . . . These considerations of experience and logic are, of course, related, for history and experience shape the functioning of governmental processes. If the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches.

*Capital Cities Media, Inc. v. Chester,* 797 F.2d 1164, 1174 (3d Cir.1986) (quoting *Press–Enterprise Co. v. Superior Court of California,* 478 U.S. 1, 8–9, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (examining whether First Amendment right of access to records of judicial proceedings exists)). In *Capital Cities,* the court applied the criteria set forth in *Press–Enterprise* to

determine if the same right of access applied to information held by a state agency. *See id.; see also Whiteland Woods, L.P. v. Township of W. Whiteland,* 193 F.3d 177 (3d Cir.1999) (expanding *Capital Cities'* First Amendment criteria to determine public right of access to township planning commission meeting). The court held a party relying on the First Amendment for a right to access government information must allege and prove access has traditionally been afforded to the public, and that access "plays a significant positive role in the functioning of the particular process in question." *Capital Cities,* at 1174.

Appellants assert Pennsylvania's constitution demonstrates a "historical commitment to open government."[2] *See also Fenstermaker,* 530 A.2d at 421 (Larsen, J., concurring). These sections make a commitment to open government, but they do not imply an infinite scope; their plain language limits their scope to legislative proceedings and sessions, not administrative records. *See* Article I, § 7 ("examine the *proceedings* of the Legislature")(emphasis added); Article II, § 12 ("journal of its *proceedings* ")(emphasis added); Article II, § 13 ("*sessions* . . . shall be open")(emphasis added); *see also* Article II, § 11 ("Each House shall have the power to determine the rules of its *proceedings.*") (emphasis added).

■ The scope and type of access sought by appellants is not consistent with that provided under the Pennsylvania's Constitution. Neither has such access been traditionally af-

---

**2.** The printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty. . . .
Pa. Const. art. I, § 7.
Each House shall keep a journal of its proceedings and from time to time publish the same, except such parts as require secrecy, and the yeas and nays of the members on any question shall, at the desire of any two of them, be entered on the journal.
Pa. Const. art. II, § 12.
The sessions of each House and of committees of the whole shall be open, unless when the business is such as ought to be kept secret.
Pa. Const. art. II, § 13.

forded to the public at large. The common law, or rather the lack thereof, does not support the "traditional" aspect of the public's First Amendment right of access. Accordingly, there is no First Amendment right of access to legislative telephone records.

█ Appellants also contend the Commonwealth Court erred by not examining whether the newspaper has a right of access under Article I, § 7 of the Pennsylvania Constitution. Count I of the Petition for Review is captioned "Declaratory Judgment–Common Law and First Amendment Right of Access," and is comprised of six numbered paragraphs. Paragraph 37 incorporates Paragraphs 1–36; Paragraph 38 asserts a common law and First Amendment right of access to the records. Appellants argue the following incorporated paragraphs sufficiently raise their claim under Article I, § 7:

24. The Herald–Standard and Mr. Sunyak have the same right of access to public records as other members of the press and public under the common law of Pennsylvania and under the United States and Pennsylvania Constitutions.

31. Moreover, the Pennsylvania Constitution expresses a strong mandate and tradition in favor of openness in governmental affairs in general and in legislative affairs in particular, stating that, "The printing press shall be free to every person who may undertake to examine the proceedings of the legislature or any branch of government." Pennsylvania Constitution, Article I, Section 7.

36. Moreover, Defendant Roberts' release of said Telephone Records to competing media was an improper act of retaliation against perceived critics and an attempt to chill the exercise of Plaintiff's rights under the First Amendment of the United States Constitution and Article I, Section 7 of the Pennsylvania Constitution.

Petition for Review, 9/1/00, at ¶¶ 24, 31, 36.

█ These paragraphs aver a theory of law from which relief may be granted. *See County of Allegheny v. Common-*

*wealth,* 507 Pa. 360, 490 A.2d 402, 408 (1985) (if facts pleaded state claim for which relief may be granted under *any theory of law,* then there is sufficient doubt to require preliminary objection in nature of demurrer to be rejected); *see also Willet v. Pennsylvania Medical Catastrophe Loss Fund,* 549 Pa. 613, 702 A.2d 850, 853–55 (1997) (concluding Commonwealth Court erred in sustaining preliminary objections under demurrer standard in *County of Allegheny* ). Appellants alleged a right of access based on common law, the First Amendment, *and* Article I, § 7. The Commonwealth Court did not address whether the latter cumulatively or alternatively gives rise to a right of access; affirmation of the court's analysis of the common law right is not *per se* determinative of the remaining bases. Accordingly, we must find the Commonwealth Court erred by not considering appellants' claim under Article I, § 7 of the Pennsylvania Constitution.

This claim represents a constitutional issue of first impression. *See Pennsylvania AFL–CIO ex. rel. George v. Commonwealth,* 563 Pa. 108, 757 A.2d 917, 921 (2000). Appellants assert Article I, § 7 provides more expansive rights than the First Amendment, and urge this Court to conclude the press has a right to legislative records. Article I, § 7 has been recognized as providing broader freedom of expression than the federal constitution. *See Pap's A.M. v. City of Erie,* 571 Pa. 375, 812 A.2d 591 (2002); *Bureau of Prof'l and Occupational Affairs v. State Bd. of Physical Therapy,* 556 Pa. 268, 728 A.2d 340, 343–44 (1999). The Pennsylvania Constitution differs in that it has codified the proscription of prior restraints on speech, whereas the federal Constitution prohibits prior restraints in most situations based upon the common law. *William Goldman Theatres, Inc. v. Dana,* 405 Pa. 83, 173 A.2d 59, 61–62 (1961). Historically, Pennsylvania's constitution has differed from the United States Constitution regarding speech:

> [Pennsylvania] had the only original state constitution that protected freedom of speech as well as press. The Pennsylvania provision read: "That the people have a right to freedom of speech, and of writing, and publishing their

sentiments; therefore the freedom of the press ought not to be restrained." This is the provision invariably referred to as "the press clause" of the Pennsylvania Constitution.... [T]his language eventually played an important role in the evolution of the first amendment.

But the Pennsylvania Constitution of 1776 contained a second provision relating to the press. This second press clause has been little noticed because it was contained not in the Declaration of Rights, where the other press clause was located, but in the main body of the constitution, called the "Plan or Frame of Government for Commonwealth or State of Pennsylvania." This second press clause read as follows: "The printing presses shall be free to every person who undertakes to examine the proceedings of the legislature, or any part of government."

David A. Anderson, *The Origins of the Press Clause*, 30 UCLA L.Rev. 455, 465 (1983) (footnotes omitted).

■ However, we find no right of access to legislative records beyond the proceedings of the Legislature. Article I, § 7 may be read to protect the right to *publish* information about the Legislature, but it has not been so broadly interpreted to include a heightened right to *gather* information from the Legislature. This Court previously concluded Article I, § 7 provides no more expansive rights of the press to access information than the First Amendment. In *McMullan, supra,* the issue was whether the First Amendment and Article I, § 7 guarantee the press the unrestricted right to "gather" information.[3] Although the circumstances in *McMullan* involved a statutory provision against the dissemination of names of public assistance recipients, the Court stated, *"[Article] I, [§ ] 7, of the Pennsylvania Constitution goes no further than its federal counterpart in guaranteeing that the press be free to print, publish and distribute." Id.,* at 896 (emphasis added).

**3.** To "gather" news was to "compel the furnishing of information." *McMullan,* at 895–96; *cf. Houchins,* at 11, 98 S.Ct. 2588 (recognizing First Amendment right to gather news, but no First Amendment right to compel others to supply information).

Appellants offer interpretations of Tennessee and Kentucky's state constitutional provisions, which mirror Article I, § 7. However, neither state's courts have considered whether their constitutions provide a right of public access to legislative records. "[W]e cannot, as Appellants urge, adopt this reading of the constitution by relying on language from the case of a sister state which dealt with an issue different from the one before this Court." *Pennsylvania AFL–CIO*, at 922.

Appellants also assert, as policy considerations, access to legislative records will: (1) promote public confidence in government; (2) improve the operations of government by encouraging public officials to act responsibly; and (3) act as a public check on bad conduct that may otherwise arise in secret proceedings. These are laudable goals, but the remedy for these policy considerations does not lie with the courts; this is for the legislative body to resolve, not the judiciary. Pennsylvania's constitution affords no guidelines, and absent statutory standards, the courts would have to fashion *ad hoc,* and hence inconsistent, rules of access. Appellant does not have a right of access to legislative records under Article I, § 7 of the Pennsylvania Constitution. The Commonwealth Court's sustainment of demurrer for Count I is affirmed.

Whereas Count I of the petition for review concerned access to the telephone records, Counts II & III take issue with appellee's actions after he decided to grant access to the records. In these Counts, appellants alleged appellee violated their equal protection rights when he conditioned access to the records, and retaliated against them for exercising their First Amendment right of speech. Appellants sought relief under 42 U.S.C. § 1983. The Commonwealth Court determined, regardless of the viability of appellants' § 1983 claims, appellee was protected by legislative immunity under the Speech or Debate Section of Article II, § 15 of the Pennsylvania Constitution. Based on the United States Supreme Court's interpretation of the federal Speech or Debate Clause, *see Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975), the court found appellee

enjoyed immunity from § 1983 claims, sustained his demurrer, and dismissed Counts II & III.

Appellants contend the Commonwealth Court erred in concluding "denying access to [appellee's] business telephone records is likewise within the sphere of legislative activity" under the immunity of the Speech or Debate Section.[4] The Commonwealth Court surmised appellee's telephone calls were within the ambit of "legislative process"; consequently, denying access or offering access of the records "albeit with a restriction" was also within the sphere of legislative immunity. However, whether appellee enjoys immunity from a civil action based on withholding records is not the issue raised by these counts. It is appellee's selective or conditional distribution of his telephone records, not his denial of access to them, which is the basis for appellants' claims.

As the Pennsylvania Speech or Debate Section is modeled after that of the United States Constitution, U.S. Const. art. I, § 6, cl. 1, decisions interpreting the federal clause are instructive. *See Consumers Education and Protective Ass'n v. Nolan,* 470 Pa. 372, 368 A.2d 675, 680–81 (1977) (no basis for distinguishing scope of state Speech or Debate Section applicable to General Assembly from that of federal clause applicable to Congress).

> [T]he Supreme Court of the United States recently held that the federal Speech [or] Debate Clause must be interpreted broadly in order to protect legislators from judicial interference with their legitimate legislative activities, and that even where the activity questioned is not literally speech or debate, a court must determine if it falls within the "legitimate legislative sphere"; if it does, the action against the legislator calling it into question, whether criminal or civil, must be dismissed.

*Id.,* at 680–81 (citing *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975)). Legislative acts within the scope of the Clause:

4. [F]or any speech or debate in either House shall not be questioned in any other place.
 Pa. Const. art. II, § 15.

[M]ust be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Gravel v. United States,* 408 U.S. 606, 625, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972) (holding private publication of "Pentagon Papers" by United States Senator not part of legislative process).

The United States Supreme Court has consistently held the transmission of information by members of Congress designed to inform the public is outside the protection of the Clause. *See Hutchinson v. Proxmire,* 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979) (Clause did not immunize United States Senator from liability for defamatory statements made in newsletters and press releases); *see also United States v. Brewster,* 408 U.S. 501, 512, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972) ("wide range of legitimate errands" performed for constituents, including news releases, are legitimate activities but political in nature, and therefore beyond scope of protection afforded by Clause). Under the federal clause, individual discriminatory and retaliatory distribution of records by a legislator are not protected legislative activities, and the Speech or Debate Clause does not immunize them. This analysis of the federal clause is persuasive in our interpretation of the state section. Accordingly, the Commonwealth Court's order, to the extent it sustained preliminary objections against Counts II & III on the basis of Pennsylvania's Speech or Debate Section, is reversed.

 Regardless of its immunity determination, the Commonwealth Court considered whether appellants alleged *prima facie* equal protection claims in Count II under § 1983. To plead § 1983 claims, appellants must allege: (1) appellee deprived them of a federal right; and (2) appellee denied the right while acting under the color of law. *See Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572

(1980). Here, appellants were required to allege appellee deprived them of their right to equal protection:

> The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly. However, it does not require that all persons under all circumstances enjoy identical protection under the law.

*Curtis v. Kline*, 542 Pa. 249, 666 A.2d 265, 267 (1995) (citations omitted). The court concluded the newspaper was not denied access to the records; access was offered, "albeit with a restriction on which reporter would be able to view the records, and that it declined." *Uniontown Newspapers*, at 1231–32. The offer of access with the reporter restriction did not subject the newspaper to treatment sufficiently different to trigger a claim. *Id.*, at 1232. The Commonwealth Court stated the reporter was required to allege he received different treatment from other similarly situated individuals. *Id.* Citing *Myers v. Ridge*, 712 A.2d 791 (Pa.Cmwlth.1998), the court concluded the reporter was required to show he was intentionally discriminated against because of his membership in a particular class, not merely because he was treated unfairly as an individual. Accordingly, because appellants failed to establish they were denied equal protection, their claims in Count II were deemed legally deficient; appellee's preliminary objections in the form of a demurrer were sustained.[5]

 "Preliminary objections should be sustained only in cases that are clear and free from doubt. In ruling on

---

5. The court reasoned that since the calls in question were reimbursed by the General Assembly, they assumedly concerned legislative matters, and thus were actions taken under color of state law; thus, the second prong of the § 1983 claim was satisfied. Appellee argues it was his decision about access to the records, not the making or reimbursement of the calls, which is the basis of appellants' claims; as his refusal to provide the bills was not attributable to the Commonwealth, he was not acting under the color of law.

This argument, however, was not raised in the preliminary objections. *See* Preliminary Objections, at ¶¶ 40–46. In fact, appellee assumed the posture that he was acting in a "legislative sphere" when asserting immunity under the Speech or Debate Section. Accordingly, this issue is not properly before this Court.

whether preliminary objections were properly sustained, an appellate court must determine whether it is clear from doubt from all the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish a right to relief." *Pennsylvania AFL–CIO*, at 920 (citations omitted). There must exist a degree of certainty that the law will not provide relief based on the facts averred. *See Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 259 A.2d 443, 449 (1969).

Appellants contend the Commonwealth Court did not accept as true all facts pled in the petition, which alleged access was conditioned on the exclusion of the reporter, and afterward the newspaper was offered access only if "counsel 'absolve[s]' him of wrongdoing [in] connection with the records." Petition for Review, at ¶¶ 10, 18. Appellee argues that if such claims are actionable, then an elected official who chooses to give an exclusive interview to one media outlet about a governmental matter could be sued by a competing media outlet for not providing the same access or information. However, the issue is not about a newsmaker denying access; rather, appellants alleged unequal treatment by a government official who conditioned access on the exclusion of a reporter and a pardon by the press.

In *Capital Cities, supra* at 1176, the Third Circuit Court of Appeals concluded a state agency's granting access to those news seekers favorably disposed to it, while denying access to those it considered unfriendly, may be an actionable equal protection claim. Further, the First Circuit stated in *Anderson v. Cryovac, Inc.*, 805 F.2d 1 (1st Cir.1986):

> The danger in granting favorable treatment to certain members of the media is obvious: it allows the government to influence the type of substantive media coverage that public events will receive. Such a practice is unquestionably at odds with the [F]irst [A]mendment. Neither the courts nor any other branch of the government can be allowed to affect the content or tenor of the news by choreographing which news organizations have access to relevant information.

*Id.*, at 9. In light of the newspaper's allegations of fact and the legal theory in *Capital Cities*, this Court cannot hold with

the requisite degree of certainty that, at this stage in the proceedings, relief is foreclosed. The newspaper has alleged a cognizable equal protection claim sufficient to proceed.

██ The reporter contends he was denied access to records given to other similarly situated reporters, based on his membership in a class of reporters whose speech offended appellee. *See* Petition for Review, at ¶¶ 5, 19, 20, 22, 23, 45 and 50. In *Myers v. Ridge, supra,* a prisoner filed a petition for review in the nature of a mandamus alleging, *inter alia,* he was denied equal protection when not given parole. The Commonwealth objected in the form of a demurrer; the Commonwealth Court summarily sustained the objection because the prisoner failed to sufficiently allege intentional disparate treatment. *Id.,* at 799. In its decision, the court cited *Capital Cities* for the premise that "a plaintiff must show intentional discrimination because of the membership in a particular class, not merely that he was treated unfairly as an individual." *Id.* Here, the Commonwealth Court relied upon *Myers* to require the reporter to allege he was discriminated because of his membership in a class, not as an individual.

We disagree. There is nothing in the equal protection analysis of *Capital Cities* suggesting equal protection claims for classes of one are prohibited. In fact, five of the six judges who voted separately from the majority recognized the validity of the equal protection claim. *See id.,* at 1178 (Adams, J., concurring), 1191–92 (Gibbons, J., dissenting) (joined by Higginbotham, Sloviter, Mansmann, J.J.). In *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (*per curiam* ), a property owner requested connection to the municipal water supply. The municipality agreed to the connection if the owner granted a 33–foot easement. The owner objected because other property owners were only required to provide a 15–foot easement. The municipality later agreed to a 15–foot easement.

The property owner sued the municipality, claiming the 33–foot easement demand was "irrational and wholly arbitrary"; the demand was motivated by ill will resulting from a prior,

unrelated action in which the owner prevailed against the municipality. *Id.*, at 563, 120 S.Ct. 1073. The Court considered whether the owner could maintain an equal protection claim as a "class of one," where the owner did not allege membership in a class or group. *Id.*, at 564, 120 S.Ct. 1073. The Court observed that it had previously recognized the viability of equal protection claims brought by a "class of one," and the plaintiff was only required to allege: (1) she had been intentionally treated differently from others similarly situated; and (2) there was no rational basis for the difference in treatment.[6] *Id.* The municipality's motive was not a consideration in determining whether the property owner's complaint was sufficient to state such a claim.

Here, appellants alleged appellee allowed reporters from competing newspapers to examine the telephone records and unlawfully withheld the records from the newspaper and reporter. Petition for Review, at ¶¶ 27, 44. As in *Willowbrook*, the aspect of the complaint pertaining to the reporter's claims can be fairly construed to allege a violation of his right to equal protection. Further, the only basis for appellee's action alleged in the pleading was the newspaper was "biased," and the reporter was "out of control" and "unable to fairly and objectively report any news pertaining to me or my office." Petition for Review, at ¶¶ 19, 20, 22, 26. To resolve these issues at this stage would be premature. Accordingly, the Commonwealth Court's order dismissing these claims is reversed, and the claim set forth in Count II of the complaint is remanded to the Commonwealth Court for further proceedings.

The Commonwealth Court addressed viability of the equal protection claims in Count II, but relied exclusively on the Speech or Debate Section analysis to dismiss the retaliation claims in Count III. *See Uniontown Newspapers*, at 1234 n. 14. Since we reverse the court's immunity conclusion, appellee's preliminary objection pertaining to this Count remains. Rather than remand the unresolved objection to the Common-

---

**6.** The rational basis test was applied in *Willowbrook* because the government's action neither infringed on a constitutional right nor involved a suspect classification.

wealth Court, this Court will dispose of the matter for the sake of judicial economy.

"[T]he Supreme Court ... consistently recognized 'that retaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment.'" *McBride v. Village of Michiana,* 100 F.3d 457, 460–61 (6th Cir.1996) (quoting *Fraternal Order of Police Lodge No. 121, Inc. v. City of Hobart,* 864 F.2d 551, 553 (7th Cir.1988)). In *McBride,* the court held governmental retaliation against a news reporter aimed at chilling First Amendment rights was actionable under § 1983. *Id.* (denying qualified immunity to governmental officials and remanding for further proceedings). To prove a claim of retaliation, a plaintiff must establish: (1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendant's action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. *Bloch v. Ribar,* 156 F.3d 673, 678 (6th Cir.1998) (citations omitted). There is no question appellants have alleged facts sufficient to establish a *prima facie* retaliation claim in Count III. *See* Petition for Review, at ¶¶ 17–23, 36, 50; R.R., at 6a–7a, 9a, 12a. However, significant factual questions remain, which require this matter to be remanded for further proceedings. *See, e.g., Suppan v. Dadonna,* 203 F.3d 228, 235 (3d Cir.2000) (trivial infraction of First Amendment speech not actionable under § 1983). Accordingly, appellants' retaliation claims in Count III are reinstated and remanded to the Commonwealth Court for further proceedings.

Affirmed in part; reversed in part and remanded to the Commonwealth Court. Jurisdiction relinquished.

Chief Justice CAPPY files a concurring and dissenting opinion in which Justice CASTILLE joins.

Justice LAMB files a dissenting opinion in which Justice CASTILLE joins.

## CONCURRING AND DISSENTING OPINION

Chief Justice CAPPY.

I join the majority insofar as it determines that there is no right of access to the records at issue here, and that Appellee's actions are not protected under the immunity of the Speech or Debate Clause. I dissent from the majority's decision to reinstate those claims which were raised pursuant to 42 U.S.C. § 1983, since I agree with Mr. Justice Lamb that no state action is implicated by Appellee's acts.[1] Thus, I would affirm the order of the Commonwealth Court.

Justice CASTILLE joins this concurring and dissenting opinion.

## DISSENTING OPINION

Justice LAMB.

I dissent from the holding of the majority that the reporter in this case has stated a cause of action under Section 1983[1] sufficient to withstand preliminary objections. The Commonwealth Court correctly analyzed the claim and its order should be affirmed.

In this case, there is no constitutional wrong and no cognizable harm. The legislator, Lawrence Roberts, offered his telephone records—records to which the press has no underlying right of access—to several media outlets. One of those outlets was the Herald–Standard, the newspaper for which

---

1. Contrary to the majority, I would find that this issue of whether Appellee was acting under color of law is properly before the court, since Appellee addressed the issue in his brief in support of his preliminary objections, and the Commonwealth Court evaluated the issue on the merits.

1. 42 U.S.C. § 1983 provides:

 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Paul Sunyak, Appellant, worked as a reporter. The legislator, however, conditioned his release to the Herald Standard with a requirement that Appellant not be given the records. The Herald–Standard rejected this offer. Thus, the only question is whether refusing to offer the records to a particular reporter constitutes a deprivation of a federally-protected right under Section 1983.

Section 1983 confers no substantive rights, it "merely provides a method of vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Therefore we have to look elsewhere for a federally-protected right. There is no federally-protected right to the telephone records, as the majority so ably analyzed. Appellant avers, however, that he has a federally-protected right to be treated equally with other reporters and that the legislator's failure to do so deprived him of equal protection under the Fourteenth Amendment to the U.S. Constitution.[2]

Equal protection analysis requires that we find state action that denies a person "equal protection of the laws" because it constrains only the actions of the State not of private persons. U.S. Const. amend. XIV, § 1, cl. 4. There is no state action or color of state law[3] in the individual decision of a legislator to share private information with the news media. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 360, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (holding that regulation of a utility was not

**2.** The Equal Protection Clause of the United States Constitution is found at Section 1 of the Fourteenth Amendment and provides:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
U.S. Const. amend. XIV, § 1, cl. 4.

**3.** Article I, Section 26 of the Pennsylvania Constitution is known as the state's equal protection provision and is analyzed under the same standards as those for state action under the Fourteenth Amendment to the United States Constitution. *Small v. Horn*, 554 Pa. 600, 722 A.2d 664, 672 n. 13 (1998).

a sufficient nexus to make a termination a state action); *Adler v. Montefiore Hospital Ass'n of Western Pennsylvania*, 453 Pa. 60, 311 A.2d 634, 639 (1973) (holding that regulation of a hospital did not create a sufficient nexus to find an equal protection violation for a patient denied treatment by the physician of his choice).

There is an "essential dichotomy between discriminatory action by the State, which is prohibited by the Equal Protection Clause, and private conduct, however discriminatory or wrongful, against which that clause erects no shield." *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (allowing discrimination in service by a private club) (citation omitted). Where "the impetus for the discrimination is private, the State must have significantly involved itself with invidious discriminations, ... in order for the discriminatory action to fall within the ambit of the constitutional prohibition." *Moose Lodge*, 407 U.S. at 173, 92 S.Ct. 1965.

The Fourteenth Amendment offers no shield against private conduct. *Klavan v. Crozer–Chester Medical Center*, 60 F.Supp.2d 436, 442 (E.D.Pa.1999) (rejecting a state action claim against doctors who failed to honor a living will). The purpose of the state action requirement is to assure that "constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (emphasis in original).

In this case, Appellant can point to no participation by the state in the decision by the legislator to offer his telephone records to selected media outlets. Since the public has no right of access to the records, the decision to release or not to release them is a purely private matter. If, for instance, the legislator gave one reporter his home telephone number but refused to give it to another, there could be no successful equal protection claim. This distinguishes the case from *Capital Cities Media, Inc. v. Chester*, 797 F.2d 1164, 1176 (3d Cir.1986), in which the Third Circuit remanded the case,

without deciding the answer, to determine whether the media outlet had asserted an equal protection claim against **an agency.** In *Capital Cities,* there was no underlying question of whether or not the selective release was state action, as there is here, because the release of information was conducted by an agency of the federal government.

Appellant's argument also fails on the second prong of the equal protection argument, that of protected classes. When bringing a claim that a violation of the Equal Protection Clause occurred, a plaintiff must establish that he is treated differently because he belongs to a certain classification of people causing those acting under color of state law to treat him differently, and not merely that he was treated unfairly as an individual. *Urbanic v. Rosenfeld,* 150 Pa.Cmwlth. 468, 616 A.2d 46, 56 (1992) (every allegation of disparate treatment by police does not become a "federal case"), *aff'd per curiam,* 534 Pa. 266, 631 A.2d 596 (1993).

The state may always treat different groups of people differently without violating the principles of equal protection. Equal protection does not require that all persons under all circumstances enjoy identical protection under the law. *James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 477 A.2d 1302, 1305 (1984) (upholding a former notice provision against an equal protection claim). Government action cannot violate the Equal Protection Clause if it does not create classifications among, or discriminate between, those affected. *Palmer v. Thompson,* 403 U.S. 217, 219–26, 91 S.Ct. 1940, 29 L.Ed.2d 438 (1971); *Laudenberger v. Port Authority of Allegheny County,* 496 Pa. 52, 436 A.2d 147, 155 (1981)(upholding Pa.R.C.P. 238 against an equal protection challenge).

The Fourteenth Amendment protects "discrete and insular" groups in need of "extraordinary protection from the majoritarian political process." *United States v. Carolene Products Co.,* 304 U.S. 144, 152–53 n. 4, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). A suspect class is one "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness

as to command extraordinary protection from the majoritarian political process." *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). For instance, there is no fundamental right to a security clearance, *Department of Navy v. Egan,* 484 U.S. 518, 528, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), nor are "non-world class mathematicians" a protected class for equal protection purposes. *Stehney v. Perry,* 101 F.3d 925, 937 (3d Cir.1996).

Clearly, Appellant is not a member of a discrete and insular group in need of protection. Nor is he, as he argues, a member of a class of one because no governmental entity participated in treating the reporter differently. *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (finding an equal protection violation in disparate condemnations for sewer rights of way).

In this case, there is no state action involved in a legislator's release of his protected telephone records; and, reporters with hurt feelings are not a protected class. The reporter, who works for a newspaper, which buys ink by the barrel, surely has a more effective avenue of recourse than Section 1983.

Accordingly, I would affirm the order of the Commonwealth Court.

Justice CASTILLE joins this dissent.